In re DEAN, Debtor.

Mr. and Mrs. NORTON, Plaintiffs,

v.

DEAN, Defendant.

Bankruptcy No. 386–33453 M–7.

Adv. No. 386–3951.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Nov. 13, 1987.

Toby L. Gerber, Paul A. Hoffman, Dallas, Tex., for plaintiffs.

Bruce W. Long, Dallas, Tex., for defendant.

## AMENDED MEMORANDUM OPINION

ROBERT C. McGUIRE, Chief Judge.

The prior opinion signed November 3, 1987 is modified in form only to omit the first names of the parties involved, and is hereby amended in such respects only.

This is a § 523(a)(6) complaint to determine dischargeability. Following are the Court's amended findings of fact and conclusions of law under Bankruptcy Rule 7052. In 1982, Mr. and Mrs. Norton ("Plaintiffs") filed suit in the 160th District Court of Dallas County, Texas against Dean ("Debtor") and his corporation, alleging that Dean, a licensed social worker, during the course of his treatment of Plaintiffs, engaged in sexual relations with the Plaintiff, Mrs. Norton, resulting in severe emotional and psychological damage, as well as physical pain, to Mrs. Norton, and, in physical pain, mental anguish, lost earnings and loss of consortium to Mr. Norton, her husband. Plaintiffs also sought exemplary damages based upon Dean's gross negligence in breach of his fiduciary duties to Plaintiffs.

After a trial before a jury, the jury answered the Special Issues submitted to it by the Court. The jury found that Dean had sexual relations with his patient, Mrs. Norton; that his sexual relations with Mrs. Norton proximately caused injuries to Mrs. Norton and to Mr. Norton; that Dean's sexual relations with Mrs. Norton was negligence; that both Mrs. Norton and Mr. Norton were damaged as a result of Dean's sexual relations with his patient Mrs. Norton; and Dean's actions constituted willful or wanton negligence. Additionally, the jury awarded $50,000 in exemplary damages against Dean for damages for the willful and wanton negligence.

■ A claim or judgment based merely upon negligence does not necessarily constitute a willful and malicious injury within the exception of § 523(a)(6), even if the negligence is alleged to be reckless and wanton. 3 Collier on Bankruptcy § 523–112 (15th ed. 1986).

The main thrust of the State Court lawsuit were complaints for negligence and gross negligence. However, as indicated above, there was a finding that Debtor did have sexual relations with Mrs. Norton. There were findings that Dean's sexual activity with Mrs. Norton was a proximate cause of injury to Mr. and Mrs. Norton. Proximate cause was defined in terms of ordinary care. Except for the exemplary damage finding, the remaining damage issues were predicated on "damages resulting from the occurrence in question". The issues supporting the award of exemplary damages based same on "willful or wanton negligence" which was defined as "more than momentary thoughtlessness, inadvertance or error of judgment. It means such an entire want of care as to indicate that the act or omission complained of was the result of conscious indifference to the right, safety or welfare effected by it".

The issues tried in the State Court were tried on the preponderance of the evidence standard.

On March 21, 1984, based upon the jury's answers to the Special Issues submitted to it, judgment was entered in favor of Plaintiffs and against Defendant, jointly and severally with his corporation, in the amount of $220,500.

Subsequent to the judgment, the Texas Department of Human Resources ("TDHR"), based upon Dean's unethical conduct in having sexual relations with a patient, Mrs. Norton, revoked Dean's certification as a Certified Social Worker and order of recognition as an Advanced Clinical Practitioner. Dean appealed the revocation of his certification. *See*, §§ 50.-021–.022, Tex.Hum.Res.Code.

Dean's appeal was governed by the provisions of art. 6252–13a, Texas Revised Civil Statutes. Pursuant to that statute, Dean was afforded the opportunity to:

(a) be represented by counsel (§ 14(r));

(b) take depositions of witnesses (§ 14(d–k));

(c) require the production of documents (§§ 14(c), 14a(a)(1));

(d) subpoena witnesses (§ 14(c)); and

(e) cross-examine witnesses in order to present "a full and true disclosure of the facts" (§ 14(p)).

Furthermore, the Texas Rules of Evidence and other rights provided by the Texas Rules of Civil Procedure applied to the appeal proceeding. Art. 6252–13a, §§ 14(a), 14a.

On November 28, 1984, Dean's appeal was heard by the Social Work Appeals Committee (the "Committee") of the TDHR in Austin, Texas. At that hearing, conducted according to the foregoing provisions of art. 6252–13a, Dean was represented by counsel, and evidence was presented both for and against the revocation of his certification. On February 13, 1985, the Committee rendered its final decision upholding the revocation of Dean's certification.

The Committee found that Dean had engaged in sexual activity with his patient, Mrs. Norton; that Mrs. Norton suffered severe emotional distress as a result of said sexual activity; that Dean's sexual activity with his patient, Mrs. Norton, constituted unethical conduct in violation of Chapter 50, Human Resources Code, as well as the Rules of the TDHR; and the long standing posture of the mental health profession is that it is unethical and damaging for a therapist to engage in sexual activity with a client/patient. Based upon those findings, the Committee concluded that Dean had violated Rule 6120.3, Code of Ethics, Texas Department of Human Resources General Licensing Handbook and Chapter 50, Human Resources Code, by engaging in sexual activity with Mrs. Norton; Dean's sexual relationship with his client, Mrs. Norton, constituted unethical conduct; and the TDHR revoked Dean's social work certification and order of recognition as an Advanced Clinical Practitioner.

After being informed of the final decision of the Committee, Dean had the opportunity to file a motion for rehearing with that committee (art. 6252–13a, § 16), and he had the opportunity to seek judicial review of the final decision (art. 6252–13a,

§ 19). Dean did not take advantage of either opportunity.

On or about September 17, 1986, Debtor filed his petition seeking relief under Chapter 7 of the United States Bankruptcy Code (the "Code"), listing Plaintiffs as creditors in the schedules filed therewith. On or about October 16, 1986, Plaintiffs filed their complaint to determine dischargeability of the debt owed to Plaintiffs by Defendants. Plaintiffs allege that the debt owed to them by Defendants is nondischargeable pursuant to § 523(a)(6) of the Code, which section provides that a discharge does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity...." Under § 101(14), "entity" is defined to include persons.

At the trial in the Bankruptcy Court, the State Court trial transcript, "live" State Court pleadings, the jury verdict and instructions, the State Court judgment, and the TDHR findings and rulings were offered into evidence. Both parties utilized portions thereof. The parties also offered limited additional testimony. The Debtor took the stand and continued to assert (as was his position in the prior proceedings) that he had not had sex with his patient, Mrs. Norton.

■ The Bankruptcy Court has exclusive jurisdiction to determine the dischargeability of the type of debts at issue here. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). The Bankruptcy Court should resort to the entire record to determine the wrongful character of the act. 3 Collier on Bankruptcy § 523–115 (15th ed. 1986). However, in making a discharge determination, the Bankruptcy Court is not limited to review of the State Court judgment and record. *In re Franklin*, 726 F.2d 606, 608 (10th Cir.1984).

■ Collateral estoppel may apply to subsidiary facts actually litigated and necessarily decided in a prior judicial proceeding. *Matter of Shuler*, 722 F.2d 1253 (5th Cir.1984); *Matter of Church*, 69 B.R. 425, 429 (Bkrtcy.N.D.Tex.1987). The Bankrupt-

cy Court is not confined to a review of the judgment rendered in the prior proceeding when considering discharge questions. The prior judgment must be supported by detailed facts sufficient as findings to meet the federal test of nondischargeability, and allow the Bankruptcy Court to discern from the record the subsidiary facts upon which is based the asserted nondischargeability of the debt at issue. *Matter of Poston,* 735 F.2d 863 (5th Cir.1984); *Matter of Allman,* 735 F.2d 863 (5th Cir.1984); *Carey Lumber Company v. Bell,* 615 F.2d 370 (5th Cir.1980); *Matter of Church, supra; In re McDonald,* 73 B.R. 877 (N.D. Tex.1987).

The vast majority of Bankruptcy Courts have held that to warrant denial of a discharge under § 523, the evidence must be "clear and convincing". Ferriell, *The Preclusive Effect of State Court Decisions in Bankruptcy,* (1st installment) 58 AMERICAN BANKRUPTCY LAW JOURNAL 349, 362 (1984). *Matter of Church, supra.*

The Bankruptcy Court trial record established by clear and convincing evidence that the Debtor had had sexual relations with Mrs. Norton as complained about in the State Court trial, and that Mrs. Norton had never previously been hospitalized, but, after this sexual encounter, had three mental hospitalizations, including one of over one year's duration. Expert testimony further showed that this event with her social worker "brought the world crashing around her" and that, as a result thereof, "she was like a rubberband about to pop". The compensatory damages found by the State Court jury were established by clear and convincing evidence.

At the State Court trial, the Debtor, while denying that the sexual activity with his patient took place, acknowledged that it would be unethical for a party in his position have sex with a patient, and that such activity could cause harm to the patient.

In the Bankruptcy Court, the Debtor offered testimony from a doctor who had twenty years experience who testified that, while incidents of this nature are rare, he had counseled in fifty situations such as this. He indicated that it would be rare for incidents of this nature to occur as a result of "malice", but same mostly resulted from "bonding" in the relationship between patient and treating counselor. There was testimony that professionals are schooled to be aware of this problem and to be on guard against it.

■ "Willful", as used in § 523(a)(6), means deliberate or intentional. "Malicious", as used, means in conscious disregard of one's duties, or without just cause or excuse, and does not require ill will or specific intent to do harm. *Chrysler Credit Corporation v. Perry Chrysler Plymouth, Inc.,* 783 F.2d 480 (5th Cir. 1986); *Perkins v. Scharffe,* 817 F.2d 392 (6th Cir.1987); *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904); *Wheeler v. Laudani,* 783 F.2d 610 (6th Cir.1986); *In re Cecchini,* 780 F.2d 1440 (9th Cir.1986); *St. Paul Fire & Marine Ins. Co. v. Vaughn,* 779 F.2d 1003 (4th Cir.1985); *In re Long,* 774 F.2d 875 (8th Cir., 1985); *In re Franklin, supra; In re Quezada,* 718 F.2d 121 (5th Cir.1983); *Seven Elves, Inc. v. Eskenazi, 704 F.2d 241 (5th Cir.1983). Also see, Aubry, Malice in Wonderland—The Meanings of Willful and Malicious in § 523(a)(6),* NORTON BANKRUPTCY LAW ADVISER, August, 1987.

■ The Court finds that the Debtor's acts were willful and malicious, the sexual acts were deliberate or intentional, and in conscious disregard of Debtor's duties and without just cause or excuse, and necessarily caused the actual compensatory damages in question.

Two of the foregoing cited cases deal particularly with the patient/doctor or counselor relationship, to wit, *Perkins v. Scharffe [podiatrist], supra, In re Franklin [osteopathic surgeon], supra. Tinker v. Colwell, supra,* involved an unsuccessful attempt to discharge a judgment for criminal conversation of the debtor with the plaintiff's wife.

For the possible applicability of the principles of collateral estoppel from the administrative hearing, *see, United States v. Utah Construction & Mining Co.,* 384

U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed. 2d 642 (1966); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262, *reh. denied* 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1405 (1982); *Snow v. Nevada Department of Prisons*, 543 F.Supp. 752 (D.Nev.1982).

■ The State Court exemplary damage award was predicated on a definition which, as indicated above, awarded exemplary damages based substantially on "reckless disregard" conduct, as opposed to deliberate or intentional conduct. The "reckless disregard" standard is not a proper grounds to hold conduct "willful and malicious" under § 523(a)(6). 3 Collier on Bankruptcy § 523–113, *supra. In re Burdick*, 65 B.R. 105 (Bankr.N.D.Ind.1986); *In re Fulgham*, 70 B.R. 168 (Bankr.D.N.M. 1986); *Cassidy v. Minihan*, 794 F.2d 340 (8th Cir.1986); *In re Quezada, supra;* Aubry, *supra.*

However, as previously indicated, this Court has found the Debtor's conduct to be "willful and malicious" as defined by existing case law. As pointed out by the concurring opinion in *In re Perkins, supra,* at 395, we are not "writing upon an entirely clean slate". In *Coen v. Zick*, 458 F.2d 326, 329 (9th Cir.1972), the court stated:

> ... In the case before us, however, there is only one claimed cause of action consisting of a number of different acts and one claim of damages consisting of both compensatory and punitive elements for the same acts. If we follow the reasoning in *Barbachano* [*v. Allen*, 192 F.2d 836 (9th Cir.1951)] here, both punitive and compensatory damages flow from one and the same course of conduct. If the acts were intentional and malicious they would support a right in the plaintiff to be compensated for loss or damage and they would also justify a recovery of punitive damages. But the legal basis for each is the same ...

■ Where willfulness and malice exist, then compensatory and punitive damages flowing therefrom are non-dischargeable under § 523(a)(6). *In re Adams*, 761 F.2d 1422 (9th Cir.1985); *In re Siefke*, 61 B.R. 220 (Bankr.Ct.Mont.1986).

The Debtor's main defenses at the bankruptcy trial of this case were the legal argument on "willful and malicious", the defense of "not guilty" (*i.e.*, the sexual conduct complained about allegedly did not take place), and the hint of the alternative "bonding" defense.

On the Bankruptcy Court trial record made, the Court finds that the entire State Court judgment for both compensatory and exemplary damages is supported by clear and convincing evidence, and is non-dischargeable. The amount of exemplary damages is within reasonable bounds in relation to the compensatory damages awarded, and is found to be appropriate for the conduct complained about.

Judgment will be entered in accordance with the foregoing opinion.