**In re Walter Frank STRYBEL, d/b/a Walter F. Strybel, M.D., Debtor.**

**Karla ROMANO and Ronald Romano, Appellants,**

v.

**Walter Frank STRYBEL, d/b/a Walter F. Strybel, M.D., Appellee.**

**BAP No. SC 88–1476–AsPR. Bankruptcy No. 86–07922–LM7. Adv. No. C87–0142–LM7.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 23, 1989.

Decided July 27, 1989.

Daniel J. Doonan, McAlpin, Doonan & Seese, Covina, Cal., for appellants.

Ralph L. Sims, Solton, Jacobs & Weill, Downey, Cal., for appellee.

Before ASHLAND, PERRIS and RUSSELL, Bankruptcy Judges.

ASHLAND, Bankruptcy Judge.

Karla Romano and Ronald Romano appeal the bankruptcy court's decision determining that the debt owed to the Romanos was not the result of willful and malicious conduct and therefore was dischargeable in bankruptcy. We affirm.

FACTS

Karla Romano was a patient of Dr Strybel, a psychiatrist, for approximately seven months beginning in Spring, 1977. Mrs Romano suffered from depression due in part to her marriage and the recent death of her father. Mrs Romano's treatment consisted of weekly psychotherapy sessions and some medication.

On November 8, 1977, Mrs Romano went to her scheduled appointment with Dr Strybel. That night Mrs Romano called Dr Strybel's answering service and her call was transferred to his home. At trial, Mrs Romano testified that she did not recall the content of the telephone conversation, however, she did recall writing down the directions to Dr Strybel's home and arriving there. She also testified that when she arrived at Dr Strybel's doorstep, he immediately showed her his entire home. Mrs Romano testified that at some point, although she did not know when the sexual relationship first began, she engaged in

sexual conduct with Dr Strybel. Dr Strybel testified that when Mrs Romano came to his home she cried and pleaded for three hours, and said she needed to leave her home because she was afraid of her husband. Dr Strybel stated that he did not know exactly when he and Mrs Romano began to have sexual intercourse but that he did not believe they had sex that night. Dr Strybel testified that he told Mrs Romano that their doctor/patient relationship would end if she decided to stay at his house. The bankruptcy court noted that Mrs Romano corroborated this statement.

The Romanos sent a letter to Dr Strybel demanding $600,000 because of Dr Strybel's conduct towards Mrs Romano. The psychiatrist and the Romanos reached a settlement agreement whereby the Romanos released all claims against Dr Strybel in consideration for $350,000. Dr Strybel paid $100,000 in cash and signed an unsecured promissory note for $250,000 in favor of the Romanos. Dr Strybel paid three yearly installments and then stopped making further payments. In October 1986, the Romanos obtained a state court judgment awarding them $172,000 for the remaining unpaid amount.

In December 1986, Dr Strybel filed his petition seeking relief under Chapter 7 of the United States Bankruptcy Code listing the Romanos as creditors. The bankruptcy court held the debt owed to Karla and Ronald Romano was dischargeable. The Romanos contend that the judgment debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

## STANDARD OF REVIEW

The Bankruptcy Appellate Panel will not set aside the bankruptcy court's findings of fact unless clearly erroneous, and conclusions of law are subject to *de novo* review. Bankr.Rule 8013; *In re Posta*, 866 F.2d 364 (10th Cir.1989).

## ISSUE

Whether the judgment debt was the result of "willful and malicious" conduct and therefore nondischargeable under 11 U.S.C. § 523(a)(6).

## DISCUSSION

Title 11 U.S.C. § 523(a)(6) provides:

(a) A discharge under ... this title does not discharge an individual debtor from any debt-

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6). Section 523(a)(6) holds nondischargeable all debts arising from injuries "willfully and maliciously" inflicted on the person or property of another.

The definition of "willful" for the most part is undisputed. The committee notes and the courts have interpreted willful as synonymous with deliberate or intentional. *Perkins v. Scharffe*, 817 F.2d 392, 393 (6th Cir.1987); *In re Franklin*, 726 F.2d 606, 610 (10th Cir.1984).

Malicious, on the other hand, is a term that has caused conflict among the courts. Some courts require evidence of specific intent to injure to establish "malice" under § 523(a)(6), while other courts hold that "malice" can be implied from the facts and circumstances of the case. *In re Hodges*, 4 B.R. 513, 515 (Bankr.W.D.Va.1980); *see In re Dean*, 79 B.R. 659, 662 (Bankr.N.D.Tex. 1987).

The Ninth Circuit has interpreted "willful and malicious" as referring to a wrongful act, done intentionally, which necessarily causes injury and is without just cause or excuse. *In re Cecchini*, 772 F.2d 1493, 1496 (9th Cir.1985). Under this interpretation the intent to harm or injure may be inferred from the wrongful conduct itself. The Ninth Circuit is among those courts that follow a looser standard by interpreting willful and malicious merely to mean a wrongful act, done intentionally, that necessarily produces harm and is without just cause or excuse.

Dr Strybel contends that the fact that he had sex with Mrs Romano does not render his conduct willful and malicious under the *Cecchini* standard. Dr Strybel testified at trial that he permitted Mrs Romano to remain in his home because she needed a

place to stay and because they had agreed that their doctor/patient relationship had ended. Dr Strybel's explanation for having sex with Mrs Romano is that she no longer was a patient of his.

Assuming Dr Strybel's conduct was ill-advised and was done intentionally, his reasons for permitting Mrs Romano to stay in his home are persuasive within the entire factual context. During the time that Mrs Romano was a patient of Dr Strybel, he never made any sexual advances towards Mrs Romano. The bankruptcy court noted that Mrs Romano never contended that Dr Strybel made any sexual advances towards her during the course of the psychotherapy sessions. The sexual relationship between Mrs Romano and Dr Strybel began after they had agreed to end their professional relationship. Moreover, once Mrs Romano moved in to Dr Strybel's home, there were no further psychotherapy sessions. Mrs Romano contends that under the circumstances, she did not have the capacity to consent to the termination of the doctor/patient relationship. She also contends that during the five weeks she was living with Dr Strybel he was providing her with medication/drugs.

Although there might be a question as to whether the doctor/patient relationship had terminated, this does not negate the fact that Dr Strybel did not enter into a sexual relationship with Mrs Romano while he considered her a patient. Further, it is not clear from the testimony if Dr Strybel was actually providing Mrs Romano with the drugs or if it was Mrs Romano who was helping herself to the drugs in Dr Strybel's cabinets.

It was ill-advised for Dr Strybel to have a sexual relationship with Mrs Romano, but his conduct cannot be construed as "malicious" as that term is defined in § 523(a)(6).

The following cases have dealt with the interpretation of willful and malicious within the meaning of § 523(a)(6) and the claims of patients/clients against their doctors, podiatrists and social workers.

In *In re Franklin*, 726 F.2d 606 (10th Cir.1984), the Tenth Circuit held that the judgment debt arising from a physician's medical malpractice was the result of willful and malicious injury and was therefore nondischargeable. The physician's actions supported the finding that his conduct was willful and malicious. Those actions consisted of prescribing an anesthetic without inquiring into the patient's history, the over induction of the patient with anesthesia, and the cover up of records relating to the surgery and subsequent cardiac arrest. *Franklin*, 726 F.2d at 610. The nature of the physician's conduct in *Franklin* is different from the conduct of Dr Strybel. "Malice" could be implied not only from the medical malpractice but from the fact that the physician in *Franklin* tried to cover up his mistakes in medical treatment in order to avoid possible liability. Dr Strybel's conduct is simply not comparable to that of the physician in *Franklin*.

In *Perkins v. Scharffe*, 817 F.2d 392 (6th Cir.1987), the Sixth Circuit concluded that the debt arising from the medical-podiatric treatment of the patient was the result of a willful and malicious injury and therefore was nondischargeable pursuant to § 523(a)(6). The actions that supported a finding of willful and malicious conduct are that the podiatrist a) unnecessarily injected the patient's foot with an unsterile needle or contaminated medication; b) when the infection became apparent, the podiatrist failed to perform certain timely tests; c) when the tests were administered, the podiatrist ignored the results and failed to disclose the medication necessary to alleviate or cure the infection. *Perkins*, 817 F.2d at 393. The podiatrist's conduct also differs significantly from the conduct of Dr Strybel.

In *In re Dean*, 79 B.R. 659 (Bankr.N.D. Tex.1987), the court concluded that the debtor's actions were willful and malicious when the debtor (a licensed social worker) engaged in sexual relations with a client during the course of the social worker's treatment. The court stated that the acts were willful, and in conscious disregard of the social worker's duties and without just cause or excuse. *Dean*, 79 B.R. at 662. In *Dean*, unlike the present case, there was

no question that the client was under the care of the social worker.

A review of the cases covering provider/patient relationships and nondischargeable debts arising therefrom, persuades us that the conduct of Dr Strybel simply did not rise to the level of malicious conduct necessary to support a nondischargeability judgment under § 523(a)(6).

### CONCLUSION

The judgment debt was not the result of willful and malicious conduct. The judgment of the bankruptcy court is affirmed.