In re Michael PATTISON, Debtor.

Sue Katherine GILCHRIST, Plaintiff,

v.

Michael PATTISON a/k/a John Michael Pattison, Defendant.

Bankruptcy No. 7–90–02237 R S.
Adv. No. 90–0329 R.

United States Bankruptcy Court,
D. New Mexico.

Oct. 8, 1991.

Robert Hilgendorf, Santa Fe, N.M., for Pattison.

John Farrow, Albuquerque, N.M., for Gilchrist.

## MEMORANDUM OPINION

STEWART ROSE, Chief Judge.

█ Before this court is the interpretation of 11 U.S.C. § 523(a)(6) which excepts from discharge any debt "for willful and malicious injury by the debtor." Once again this court must wrestle with disputed authority over the appropriate test to determine "willful and malicious injury". Upon review of recent case law in this circuit, and in accordance with this court's decision in *In re Poore*, 37 B.R. 246 (Bankr. D.N.M.1982), the stricter standard is applicable in § 523(a)(6) proceedings. To meet the test for willful and malicious injury the debtor must commit a deliberate or intentional injury, and the debtor must actually know, or reasonably foresee that his actions will result in injury.

The plaintiff, Katherine Sue Gilchrist, sued the defendant debtor, John Michael Pattison, in Colorado State District Court for breach of fiduciary duty arising from a counselor/patient relationship. The complaint in the underlying action alleged simple negligence, wanton and reckless negligence, and the tort of outrageous conduct. Summary Judgment was granted on the claims of wanton and reckless negligence and the tort of outrageous conduct.[1] The case was decided under a simple negligence standard. In March 1990 the plaintiff was awarded $67,704 in compensatory damages plus $39,997.71 in prejudgment interest for negligent breach of fiduciary duty. The defendant filed bankruptcy under Chapter 7 on July 20, 1990. Plaintiff seeks to have the state court judgment declared nondischargeable.

The facts underlying this adversary proceeding catalog a series of misfortunes caused by the addictions of the plaintiff and the defendant. The plaintiff was an admitted alcoholic since 1980. The defendant, a recovering alcoholic practicing abstention, was an assistant director at "The Ark", an alcoholic treatment center in Colorado. Plaintiff participated in a three week treatment program at The Ark in 1984. The defendant counseled plaintiff during her treatment at the Ark. When the plaintiff left The Ark she was in "aftercare" which gave her full opportunity to return to The Ark for further counseling, but she was not formally in treatment. Within three weeks of the plaintiff's release from The Ark a social and sexual relationship developed between the plaintiff and the defendant. Plaintiff and defendant cohabited. The jury found that the Plaintiff subsequently relapsed into alcoholism as a result of this relationship.[2] The defendant previously had a relationship with another patient who also relapsed into alcoholism.

Plaintiff contends that the defendant's previous relationship with another patient gave him direct knowledge of the harmful consequences which could occur from establishing such a relationship, and therefore his conduct is willful and malicious. The defendant argues that the Colorado State District Court only considered negligence claims and dismissed claims of wanton and reckless negligence and outrageous conduct. Defendant asserts that the state court judgment should be given collateral estoppel effect, and a judgment based on simple negligence standard does not rise to

---

**1.** The Colorado State District Court found no evidence to support the plaintiff's claim of wanton and reckless negligence, and held that the issues were "essentially common negligence and breach of contract and fiduciary duty." Order on Summary Judgment (Nov. 9, 1988). Further, the court held that "outrageous conduct as a tort requires conduct so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in civilized society." *Id.* The plaintiff's motions for reconsideration were denied. Order on Motions for Reconsideration (Jan. 17, 1988).

**2.** Ms. Gilchrist's relapse was explained in part by an expert witness who identified a psycholog-

ical phenomenon known as "transference", which was mishandled. "[T]he notion of transference assumes that as therapy develops, and if therapy is working, the client comes to either consciously or unconsciously regard the therapist as a child might regard the parent." *Simmons v. United States*, 805 F.2d 1363, 1365 (9th Cir.1986). Establishing a sexual relationship between a therapist and patient can be devastating because, on a symbolic level it is similar to a parent/child sexual relationship. *Id.* Mishandling of transference is generally regarded as malpractice by courts as well as medical authorities. *Id.*

the level of maliciousness needed to prove a § 523(a)(6) claim. The court finds in favor of the debtor.

The interpretation of "willful and malicious" injury has been the subject of a longstanding dispute. The earliest indication of this is found in three Supreme Court cases decided under § 17(a)(8) of the Bankruptcy Act, the precursor to § 523(a)(6).

*Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904) involved a debtor who committed "criminal conversation", or adulterous acts with the plaintiff's wife.[3] *Tinker* held that personal malevolence toward the husband was unnecessary to the determination of willful and malicious injury. Rather "malice consisted in the willful doing of an act which the person doing it knows is liable to injure another, regardless of the consequences; and a malignant spirit or *specific intention* to hurt a particular person is not an essential element." *Id.* at 487, 24 S.Ct. at 509 (emphasis added). The act of criminal conversation was of such an "aggravated concern" that the law would imply malice in the very act itself. *Id.* at 490, 24 S.Ct. at 510. In *McIntyre v. Kavanaugh*, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916) the Court refused to "narrow" the construction of malice. *Id.* at 142, 37 S.Ct. at 40. In *McIntyre*, a knowing conversion of the plaintiff's stock was held to be willful and malicious and excepted from discharge.

The modification of this standard came in 1934, in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). In *Davis*, the plaintiff financed 90% the defendant's automobile dealership. The defendant was not to sell any car without the written consent of the plaintiff. The defendant sold a car, notified the plaintiff of the transaction, and promised to repay the plaintiff. The Court held that this type of conversion was distinct from *McIntyre*, and merely "innocent" or "technical". *Id.* at 330, 55 S.Ct. at 152. Absent "aggravated features" the Court held that

"a willful and malicious injury does not follow as of course from every act of conversion...." *Id.* The Court was unwilling to imply malice in all cases, more was needed. Absent "aggravated features" a discharge would prevail. *Id.* at 333, 55 S.Ct. at 153.

It is at this point we step into the quagmire. Many courts follow the import of *Tinker v. Colwell.* Under this interpretation, willful means deliberate or intentional. *In re Cecchini*, 780 F.2d 1440 (9th Cir. 1986). Further, "a wrongful act done intentionally, which necessarily produces harm without just cause or excuse, may constitute a willful and malicious injury." *Id.* at 1495. A specific intent to harm is not necessary to a finding of malice. *Id.* at 1496. *Accord, Perkins v. Scharffe*, 817 F.2d 392 (6th Cir.1987) (following "lenient" standard malice requires intentional act which leads to injury); *St. Paul Fire Insurance Co. v. Vaughn*, 779 F.2d 1003 (4th Cir.1985) (malice implied from conduct and surrounding circumstances); *In re Strybel*, 105 B.R. 22 (9th Cir. BAP 1989) (intent to injure inferred from wrongful conduct itself); *In re Dean*, 79 B.R. 659 (Bankr. N.D.Tex.1987) (ill will or specific intent to harm not required); *In re Meyer*, 100 B.R. 297 (Bankr.D.S.C.1988) (doing of "inherently wrong" act satisfies malice element); *In re Trudeau*, 35 B.R. 185 (Bankr.D.Mass. 1983) (malice does not require intent to harm); *In re Aguilar*, 33 B.R. 535 (Bankr. N.D. Ohio 1983) (act must result in harm but do not need intent to harm); *In re Irvin*, 31 B.R. 251 (Bankr.D.Colo.1983) (law implies malice where person of "reasonable intelligence knows act ... is contrary to commonly accepted conduct"); *In re McGiboney*, 8 B.R. 987 (Bankr.N.D.Ala.1981) (ill will is unnecessary, simply need conscious act which is knowingly wrongful); *In re Fussell*, 15 B.R. 1016 (W.D.Va.1981).

The most recent authority in this circuit is contrary to this line of cases. Controlling precedent holds that a wrongful act which necessarily leads to injury is not

---

**3.** Criminal conversation is a "[t]ort action based on adultery, considered in the aspect of a civil injury to the husband or the wife entitling him

or her to damages." Black's Law Dictionary 336 (5th ed. 1979).

enough because "acts caused by the debtor's negligence or recklessness are not encompassed by the [§ 523(a)(6) ] exception." *In re Posta*, 866 F.2d 364, 367 (10th Cir. 1989). Malice is not determined by "abstract or moralistic notions of wrongfulness." *Posta*, 866 F.2d at 367 (citing *In re Egan*, 52 B.R. [501] at 507 n. 4 [Bkrtcy. D.Minn.1985] ). Rather, § 523(a)(6) "requires instead an intentional or deliberate injury." *In re Compos*, 768 F.2d 1155 (10th Cir.1985). The defendant must actually know of or reasonably foresee harm to the plaintiff. *Posta*, 866 F.2d at 367. Malice can be proved by direct evidence revealing a specific intent to harm, or circumstantial evidence that the debtor had actual knowledge of the creditor's rights and proceeded to take action in violation of these rights. *Posta*, 866 F.2d at 364. Other courts also follow a stricter standard. *See e.g., In re Tinkham*, 59 B.R. 209 (Bankr. D.N.H.1986) (requires debtor to be "substantially certain" that act will cause injury); *In re Long* 774 F.2d 875 (8th Cir.1985) and *In re Miera*, 104 B.R. 150 (Bankr. D.Minn.1989) (in both cases malice requires a "heightened" level of culpability); *In re Finnie*, 10 B.R. 262 (Bankr.D.Mass.1981) (following *Davis v. Aetna*, malice must encompass an intent to harm the creditor); *In re Hinkle*, 9 B.R. 283 (Bankr.D.Md.1981) (following "Non-tinker" law creditor must show debtor acted with intent to harm); *In re Graham*, 7 B.R. 5 (Bankr.D.Nev.1980) (mere negligence is insufficient, "aggravated features" must exist).

Although the dispute has always existed about the interpretation of "willful and malicious", the dispute of today is a result of the adoption of the Bankruptcy Code in 1978. The language of the Bankruptcy Act and the Bankruptcy Code are similar.[4] The key words willful and malicious are identical. *Compos*, 768 F.2d at 1157. The legislative history, however, reveals departure from the looser standard:

Paragraph (6) excepts debts for willful and malicious injury by the debtor to another person or to the property of another person. Under this paragraph, 'willful' means deliberate or intentional. To the extent that Tinker v. Colwell, [sic] 139 US 473 (1902), held that a less strict standard is intended, and to the extent that other cases have relied on Tinker to apply a 'reckless disregard' standard, they are overruled. H.R.Rep. No. 595, 95th Cong., 1st Sess. 362–65 (1977) *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 632–21.

This legislative history makes clear that a deliberate or intentional injury is required to except a debt from discharge. *Compos*, 768 F.2d at 1157. The Congressional intent was "to render obsolete *Tinker* and its progeny...." *Id.* at 1158. The Congressional intent revealed by legislative history is generally followed by Bankruptcy courts.[5] *Id.* at 1157.

Granting deference to Congressional intent serves two policy goals. First, statutory law is made by Congress, not the courts. *In re Poore*, 37 B.R. 246, 248 (Bankr.D.N.M.1982). The determination of social policies to be carried out by the Bankruptcy Code is solely the domain of Congress. *Id.* Second, "statutes should be construed to give effect to every word Congress used." *Posta*, 866 F.2d at 367. The stricter standard does not emasculate the term "malicious". If nearly any intentional act would fall within the exception to discharge "willful would be rendered meaningless." *Id.* Willful and malicious are to be read in the conjunctive, and both elements must be proved for a debt to be declared nondischargeable. *Posta*, 866 F.2d at 367; *In re Schwenn*, 44 B.R. 746, 748 (Bankr.E.D.Wis.1984).

There is one remaining inconsistency. Two earlier cases within this circuit, *Den Haerynck v. Thompson*, 228 F.2d 72 (10th

---

4. Section 17(a)(8) of the former Bankruptcy Act excepted from discharge debts that are "liabilities for willful and malicious injury to the person or property of another...." Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or the property of another entity".

5. Some courts have held that the malice element was not addressed by legislative history. *See e.g., In re Irvin*, 31 B.R. 251, 258 (Bankr.D.Colo. 1983). This is not the law within this circuit.

Cir.1955), and *In re Franklin,* 726 F.2d 606 (10th Cir.1984) follow the looser standard of *Tinker,* and are often cited by contrary authority. *Den Haerynck,* decided in 1955, is a Bankruptcy Act case, and can be distinguished in that regard. *Franklin,* however, presented more difficulty because it arose under the Bankruptcy Act, but cited both the Bankruptcy Act and § 523(a)(6) as authority. This inconsistency was addressed in *In re Thurman,* 901 F.2d 839 (10th Cir.1990). *Thurman* explains that the *Franklin* decision was "misleading" because it cited both the Bankruptcy Act and the Bankruptcy Code. *Id.* at 841. *Franklin* is a Bankruptcy Act case, and "the test for dischargeability in this circuit under 11 U.S.C. § 523(a)(6) is established in *Compos.*" *Id.*

■ The remaining two issues in the case are the appropriate standard of review and whether collateral estoppel precludes relitigation of the state district court findings. The burden of proof is on the plaintiff to show that the debt is nondischargeable. 11 U.S.C. § 523(c); *In re Irvin,* 31 B.R. 251, 257 (Bankr.D.Colo.1983).

Since 1970, the issue of nondischargeability has been a matter of federal law. *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). In *Brown,* the Court determined that the doctrine of res judicata did not prevent a bankruptcy court from hearing additional evidence concerning the underlying debt. *Id.* at 138, 99 S.Ct. at 2212. The Court's holding was limited to res judicata, and collateral estoppel is applicable in dischargeability actions. *Id.* at n. 10. *Brown,* however, did not address the standard of review to be used in discharge proceedings.

■ The open question of the appropriate standard of review was resolved this year in *Grogan v. Garner,* — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The Court clearly set forth that a preponderance of the evidence standard applies in dischargeability actions. *Grogan,* 111 S.Ct. 654, 659–61 (1991). This circuit recently recognized *Grogan* in *In re Tsamasfyros,* 940 F.2d 605, 606 (10th Cir.1991). Therefore, this court reviewed the plaintiff's claim by a preponderance of the evidence standard.

This case was tried under the principles of collateral estoppel. Collateral estoppel requires that "the issue to be precluded is the same as the one litigated in the earlier state proceeding; the issue was actually litigated in the prior proceeding; and the state court's determination of that issue was necessary to the resulting final and valid judgment." *Tsamasfyros,* at 606.

■ When collateral estoppel is used in dischargeability proceedings, Bankruptcy courts are not confined to only reviewing the judgment. *In re Dean,* 79 B.R. 663 (Bankr.S.D.Tex.1987). The Bankruptcy court must also look to the record to determine if the federal test for nondischargeability has been met. *Id.* This court reviewed the jury instructions from the Colorado State District Court, as well as excerpted transcripts provided by counsel. The trial transcripts were not received for the truth of the matter, but to aid this court in understanding the jury's findings. This Court will only preclude relitigation if the jury determined that the defendant's conduct was willful and malicious. *See e.g., In re Fulgham,* 70 B.R. 168, 169 (Bankr.D.N.M.1986) (when determining collateral estoppel effect *court* must look to jury instructions). The jury received three relevant instructions. The first related to negligence:

> Negligence means a failure to do an act which a reasonably careful person would do, or the doing of an act which a reasonably careful person would not do, under the same or similar circumstances to protect oneself or others from losses. (Jury Instruction 12).

The second enumerated the elements of liability:

> 1) Pattison was a [sic] alcohol treatment counselor, and the plaintiff was a client, 2) Pattison was acting as a fiduciary of the plaintiff; 3) At a time when Pattison was acting as a fiduciary, Pattison breached a fiduciary duty to the plaintiff; 4) The plaintiff incurred damages; and 5) Pattison's breach of fiduciary duty was a

cause of the plaintiff's damages. (Jury Instruction 28).

The third defined the fiduciary duty of an alcohol treatment counselor:

> ... a duty to exercise reasonable care and skill in providing alcohol rehabilitation treatment, and not to engage in conduct which is *likely* to interfere with the client's sobriety. (Jury Instruction 33) (emphasis added).

These instructions speak in terms of negligence, of the reasonable care and skill required of the defendant to avoid conduct likely to interfere with the plaintiff's sobriety. These instructions did not require the jury to find that the defendant's conduct was 'willful and malicious' as those terms have been previously defined in this opinion. Collateral estoppel requires that the issue to be precluded must be the same, that identity of issues exists. *See* Ferriel, *The Preclusive Effect of State Court Decisions in Bankruptcy*, 58 Am.Bankr.L.J. 349, 358 (1984). Collateral estoppel effect cannot be given to the state court decision. Following *Posta* and *Compos*, a debt will only be excepted from discharge when a plaintiff can show a deliberate or intentional injury, which the defendant knew, or could reasonably foresee would harm the plaintiff. When this court pairs the issue of negligence decided below with the issue of willful and malicious injury to be determined by this court, it is clear that there is no match. The issues are dissimilar.

Using part of the holding of *Posta*, one may infer that the defendant could "reasonably foresee" that a relationship with the plaintiff would cause harm. This is not enough because conspicuously absent from the jury instructions is a finding of deliberate or intentional injury. The jury never considered wanton and reckless negligence, much less deliberate or intentional injury. This court may not fill in the blank. Collateral estoppel does not apply to the findings of simple negligence. The debt is dischargeable.