**In re Fred W. McDANIEL, Debtor.**

**Fred W. McDANIEL, et al., Plaintiffs,**

v.

**Beverly Jean BORDER, Defendant.**

**Bankruptcy No. 93–47415–H3–7.**
**Adv. No. 93–4769.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Nov. 14, 1994.

Peter Johnson, Cage, Hill & Niehaus, Houston, TX, for Fred W. McDaniel, debtor.

Milton J. Flick, Houston, TX, for Beverly Jean Border, defendant.

### MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

The Court has heard Beverly Jean Border's Complaint To Determine Dischargeability of a Particular Debt (Docket No. 1), and after considering the pleadings, evidence, and argument of counsel makes the following findings of fact and conclusions of law and renders a Judgment for Plaintiff. To the extent that any findings of fact are deemed to be conclusions of law they are hereby adopted as such. To the extent that any conclusions of law are deemed to be findings of fact they are hereby adopted as such.

*Findings of Fact*

1. Plaintiff seeks to have this Court determine as nondischargeable under 11 U.S.C. § 523 a final Judgment against the Debtor in the amount of $18,000.00 actual damages plus $5,000.00 attorney's fees rendered by the 333rd District Court of Harris County, Texas in addition to "such other and further relief as is just." This Court includes in that relief the award of other certain damages and at-

torney's fees not included in the state court Judgment. See Plaintiff's Exhibit Nos. 16–19.

2. Plaintiff urges that the debt is non dischargeable pursuant to § 523(a)(2)(A) based on false representations of the Debtor; § 523(a)(4) based on fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny; and § 523(a)(6) based on willful and malicious injury by the debtor to another entity or to the property of another entity. Complaint, Docket No. 1.

3. Fred W. McDaniel filed a Chapter 7 proceeding on October 1, 1993. Petition, Main Case Number 93–47415–H3–7.

4. In the summer of 1992 Plaintiff and Debtor/Defendant entered into a contract in which Debtor was to perform certain architectural work in connection with Plaintiff's home, a townhouse, and thereafter entered into another contract for the improvement of the townhouse in accordance with those plans and specifications. Testimony of Border, McDaniel; Plaintiff's Exhibit Nos. 3 & 4.

5. Debtor was paid "architectural fees" in accordance with invoices he submitted to Plaintiff. Plaintiff's Exhibit No. 3, Testimony of Border, McDaniel; Admissions of Fact, Standard Joint Pretrial Statement, Docket No. 10. The work on the construction contract ended prior to completion and Plaintiff sued Debtor in state court on the basis of fraud and breach of contract. Plaintiff was awarded a Judgment for $23,000.00, of which $18,000.00 represented actual damages, plus $5,000.00 attorney's fees. Plaintiff's Exhibit Nos. 16–19; Admissions of Fact, Standard Joint Pretrial Statement, Docket No. 10.

6. Debtor listed Plaintiff as a creditor in his Chapter 7 Bankruptcy Petition and has scheduled the amount of the debt as reflected in the Judgment. Admissions of Fact, Standard Joint Pretrial Statement, Docket No. 10.

7. The Court finds that the Debtor held himself out as an architect in his dealings with the plaintiff. McDaniel gave Border a business card that referred to "architectural services" and invoiced Border for "architectural drawings." Further, McDaniel imprinted a seal on the plans he submitted to Border which was a partial and somewhat illegible architectural seal. McDaniel testified to his deliberate manner of affixing the seal, by placing the blueprint in such a way that the seal appeared as if it had faded into the right hand edge of the paper, thus rendering the word "architect(s)" illegible. McDaniel also described himself as the architect on the job in correspondence to Border dated October 28, 1992. Plaintiff's Exhibit Nos. 1–4, 10, 30; Testimony of Border. The Court takes judicial notice that McDaniel listed the nature of his business as "Design and Architecture" in his Chapter 7 Statement of Financial Affairs filed October 1, 1993. Docket No. 1.

8. Plaintiff introduced McDaniel as her architect to a longtime friend, Dana Coldwell, without any denial by McDaniel as to his status or profession. Additionally, Ray Johnson, a subcontractor for McDaniel, testified that it was his belief that McDaniel was an architect. According to Johnson, McDaniel never specifically stated that he was an architect; however, McDaniel did state that he performed architectural work on various projects. Testimony of Border, Coldwell, Johnson.

9. Although McDaniel denies that he concealed his status or held himself out as an architect, the Court did not find him to be credible. The Court finds that McDaniel knew that he was not an architect or entitled to call himself an architect, but used numerous devices to imply that he was an architect and never told Border that he was not an architect.

10. Debtor was not educated as nor has he ever been an architect. He has not been licensed in any state as an architect nor entitled to represent himself as an architect. Admissions of Fact, Standard Joint Pretrial Statement, Docket No. 10.

11. Border credibly testified that she wanted an architect to plan the remodeling of her townhouse and would not have hired a "designer" or a "draftsman" to do the work. When Border told McDaniel that she wanted an architect to do her work, his response was that he could help her. She further testified that she would not have employed McDaniel

to have performed any of the design or construction work had she known that he was not an architect. Testimony of Border.

12. Based upon her reliance on McDaniel's representations that he was an architect, Border had McDaniel prepare the plans for the remodeling of her townhouse and ultimately contracted with him to perform the actual remodeling work. Testimony of Border; Plaintiff's Exhibit Nos. 3 & 4.

13. McDaniel received $1,000.00 for architectural services on the townhouse and $23,-000.00 for construction work. The construction work was abruptly terminated by McDaniel on or about October 26, 1992, when Border would not authorize another payment draw until certain tasks were completed. Admissions of Fact, Standard Joint Pretrial Statement, Docket No. 10; Testimony of Border, McDaniel.

14. The architectural design which McDaniel did on the townhouse was incompetent. It modified an upstairs bedroom such that it had no ready access to the outdoors, such as a suitable window, in violation of city fire codes. In her later efforts to complete the work, Border was not able to obtain city permits for use of McDaniel's design and never obtained an explanation as to how McDaniel got a permit to begin construction work.

15. The construction work which was performed under the direction of McDaniel on the townhouse was replete with deficiencies. Those deficiencies included but are not limited to the following: leaking tub; improper location of sewer drains for upstairs plumbing; failure to make roof and walls of townhouse watertight; lack of a plumbing permit; plumbing work failed to meet city requirements; inadequate copper tubing for water drainage to patio; improper installation of balcony and railing. Costs borne by Border to dry in and safeguard the townhouse and make it livable after McDaniel left the job, amounted to $13,209.23. The cost for Border to actually have her renovations completed will be $19,500.00. Exhibit No. 21; Testimony of Johnson. Thus, Border has sustained damages in the total amount of $32,709.23 for repair and completion. This amount is inclusive of the $23,000.00 state court judgment.

Attorneys' fees in connection with the prosecution of the instant adversary proceeding are denied as plaintiff has not submitted any evidence in connection with the amounts incurred. Testimony of Border, Johnson; Plaintiff's Exhibit Nos. 12–14, 21–22, 26, 26A, 29.

16. Border sustained the above referenced damages as a proximate result of the false representations made by McDaniel in connection with his status as an architect.

### Conclusions of Law

1. Section 523 is now governed by a preponderance of the evidence burden of proof. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The preponderance of the evidence standard applies to *all* § 523 actions. The Supreme Court reasoned that Congress did not fashion a standard of proof (i.e., clear and convincing) that favored debtors who perpetrate fraud over an interest in protecting victims of fraud. The Court further stated that the fresh start policy is limited to the "honest but unfortunate" debtor. See also *Matter of Luce,* 960 F.2d 1277 (5th Cir.1992).

2. Elements of fraud under 523(a)(2) are stated as:

That the debtor made the representation;

That at the time he knew that they were false;

That he made them with the intention and purpose of deceiving the creditor;

That the creditor relied on such representation; and

That the creditor sustained the alleged loss and damage as the proximate result of the representation made.

See *In re Houtman,* 568 F.2d 651 (9th Cir. 1978); *In re Miller,* 5 B.R. 424 (Bankr. W.D.La.1980); *In re Pommerer,* 10 B.R. 935 (Bankr.D.Minn.1981); *In re Smith,* 113 B.R. 297 (Bankr.N.D.Tex.1990); *Matter of Church,* 69 B.R. 425 (Bankr.N.D.Tex.1987).

3. False representation need not be made in writing. Actual fraud suffices and includes any deceit, artifice, trick or design involving direct and active operation of the mind used to circumvent and cheat another.

Something said, done or omitted with the design of perpetrating what is known to be a cheat or deception. Collier, ¶ 523.08 (15th ed. 1993).

4. Plaintiff's complaint also refers to § 523(a)(4). This section excepts from discharge any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny. This exception is based upon (i) fraud or defalcation while acting in a fiduciary capacity and (ii) embezzlement or larceny whether or not acting in a fiduciary capacity. The fraud definition is the same as that stated for 523(a)(2)(A). Defalcation is broader than "embezzlement" and probably broader than "misappropriation." § 523(a)(4).

5. Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. It differs from larceny in that the original taking of the property was lawful, or with consent of the owner, while in larceny the felonious intent must have existed at the time of the taking. Larceny is the fraudulent and wrongful taking and carrying away the property of another with intent to convert such property to the taker's use without the consent of the owner. As distinguished from embezzlement, the original taking of the property was unlawful. Collier, ¶ 523.14 (15th ed. 1993).

6. Plaintiff's complaint alleged a cause of action under § 523(a)(6) of the Bankruptcy Code which states that "A discharge under section ..... of this title does not discharge a debtor from any debt—for willful and malicious injury by the debtor to another entity or to the property of another entity." "Willful" as used in 523(a)(6) means deliberate or intentional; "malicious" means in conscious disregard of one's duties, or without just cause or excuse, and does not require ill will or specific intent to do harm; "reckless disregard" standard is not proper grounds to hold conduct "willful and malicious." *In re Dean*, 79 B.R. 659 (Bankr. N.D.Tex.1987). Collier, ¶ 523.16 (15th ed. 1993).

7. This Court concludes that based upon the facts established at trial, plaintiff has not met her burden of proof in establishing that this debt should be deemed nondischargeable pursuant to §§ 523(a)(4) and (a)(6).

8. In connection with § 523(a)(2)(A) plaintiff has established by a preponderance of the evidence that McDaniel made false representations to Border that he was an architect with the intent of deceiving her, she relied to her detriment on those representations and suffered injury as a result.

9. This Court is not bound by a state court's characterization of the obligation and can, if it so chooses, make alternate findings based upon a presentation of evidence before it. See *In re Dennis*, 25 F.3d 274 (5th Cir.1994) and cases cited therein. This Court need not reach the issues of collateral estoppel or res judicata as it has independently determined the nature and amount of the debt for dischargeability purposes based upon the evidence presented before it.

Based upon the above and foregoing findings of fact and conclusions of law, this Court renders a Judgment for Plaintiff in the amount of $32,709.23 against Debtor/Defendant and declares this debt to be nondischargeable. Attorneys' fees in connection with the prosecution of this adversary proceeding are denied.