**In re Dr. George COLE, Debtor.**

**Leland STANLEY, Plaintiff,**

**v.**

**Dr. George COLE, D.O., Enid Bone Joint Clinic, Linda M. Cole, Panhandle Contract Services, Inc., Family Orthopedics, P.A., LIN–Co, Defendants.[1]**

**Bankruptcy No. 291–20137–7.
Adv. No. 291–2014.**

United States Bankruptcy Court,
N.D. Texas,
Amarillo Division.

Feb. 5, 1992.

---

1. The court decides issues of dischargeability only as to the Debtor and not as to the other listed defendants since the Debtor is the only defendant who filed a bankruptcy petition.

Jon Ford, Enid, Okl., Mitch Carthel, Amarillo, Tex., for plaintiff.

Steven L. Hoard, Mullin, Hoard & Brown, Amarillo, Tex., for debtor.

## MEMORANDUM OF OPINION ON NON–DISCHARGEABILITY OF CERTAIN DEBTS

JOHN C. AKARD, Bankruptcy Judge.

Leland Stanley objected to the discharge of certain debts owed by Dr. George Cole (Debtor) under § 523(a)(4) and (6) of the Bankruptcy Code [2] which read as follows:

(a) A discharge ... does not discharge an individual debtor from any debt—

.     .     .     .     .

(4) for fraud or defalcation while acting in a fiduciary capacity ...

.     .     .     .     .

(6) for willful and malicious injury by the debtor to another entity or to property of another entity.

.     .     .     .     .

The Debtor asserted that he was not a fiduciary under § 523(a)(4) and that his actions did not constitute willful and malicious conduct under § 523(a)(6). The court finds that the § 523(a)(4) complaint is not properly before the court since the movant

**2.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

filed it after the bar date. Even if the complaint were tried by consent of the parties, the court finds the Debtor was not a fiduciary under § 523(a)(4). However, the court finds the debt is non-dischargeable under § 523(a)(6).[3]

## FACTS

In February, 1987, Mr. Stanley had his hand examined at a hospital emergency room because of dislocation of his left index finger. (Tr. I at 98 [4]). No nerve problem was found in Mr. Stanley's left hand then or at a subsequent checkup in May 1987. (Tr. I at 100.) In August 1987, Mr. Stanley experienced pain in his left hand and sought treatment at the Debtor's office in Enid, Oklahoma (Tr. I at 101.) The Debtor recommended that Mr. Stanley undergo surgery for ligament reconstruction (Tr. I at 101.) The Debtor represented that he had performed this operation many times, when in reality he had not. (Tr. I at 103.) The Debtor also failed to inform Mr. Stanley that he severed another patient's median nerve while performing the same surgery only a few months earlier. (Tr. I at 103; Tr. III at 15.)

The Debtor told Mr. Stanley that he would perform the surgery at a hospital in Pawnee, Oklahoma, which is 60 miles from Enid. (Tr. I at 106.) When Mr. Stanley asked why the surgery was to be performed in Pawnee and not in Enid, Dr. Cole responded that the hospitals in Enid did not treat his patients right (Tr. I at 106.) Dr. Cole did not mention that his staff privileges at Enid Memorial Hospital had been revoked (Tr. II at 20.)

Before the surgery, an intern took Mr. Stanley's medical history which showed no nerve problem in the left hand. (Tr. IV at 53.) However, the Debtor's pre-surgery notes indicated that a nerve problem existed in Mr. Stanley's left hand. (Tr. IV at 54.) At trial, a doctor testified he thought the Debtor inappropriately prepared these notes after surgery in order to justify his actions. (Tr. II at 93; Tr. IV at 54–55.)

The Debtor performed the surgery, but in doing so he cut Mr. Stanley's median nerve. (Tr. I at 111.) Mr. Stanley lost 75% of the use of his left hand. (Tr. I at 147.) A few weeks later, Mr. Stanley went to Dr. Howard, a hand specialist in Oklahoma City, who immediately diagnosed Mr. Stanley's problem. (Tr. I at 110.) Dr. Howard performed exploratory surgery to verify his diagnosis and observed that two inches of Mr. Stanley's median nerve had been removed. (Tr. I at 111.) After several different treatments, Dr. Howard amputated Mr. Stanley's left index finger. (Tr. I at 111–13, 115–16.)

Mr. Stanley filed a medical malpractice action against the Debtor in Oklahoma state court. At trial, the Debtor testified that he knew he did not cut Mr. Stanley's median nerve because any doctor would recognize the difference between the median nerve and the tendon. (Tr. IV at 30.) The Debtor stated that the nerve and the tendon are five millimeters apart. (Tr. IV at 30–31.) Three doctors testified that the nerve and the tendon are immediately next to each other. (Tr. I at 144; Tr. II at 88; Tr. III at 20.)

In addition, the three doctors testified that at medical school students learned to distinguish nerves from tendons in basic anatomy. (Tr. I at 146; Tr. II at 88; Tr. III at 18.) The doctors also testified that the Debtor's treatment was below the standard provided in the community. (Tr. I at 137; Tr. II at 87; Tr. III at 11.) One doctor testified that the Debtor was not

---

3. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(I).

4. The transcript and documents from the trial of Cause No. C–88–915 in the District Court of

Garfield County, Oklahoma were introduced into evidence. References are to the four volumes of the transcripts. They are: Transcript of Proceedings [Jury Trial] Volume I (hereinafter Tr. I); Transcript of Proceedings [Jury Trial] Volume II (hereinafter Tr. II); Partial Transcript of Jury Trial [Testimony of Dan Butler, M.D.] (hereinafter Tr. III); and Partial Transcript of Jury Trial [Testimony of George M. Cole] (hereinafter Tr. IV).

competent to do hand surgery. (Tr. III at 22.) Another testified that the Debtor was incompetent. (Tr. II at 134.)

The court instructed the jury on fraud, gross negligence, reckless and wanton disregard of another's rights, and willful and wanton conduct. (Def.'s Ex. 9.) The jury returned a verdict against the Debtor for $250,000 in actual damages, and $750,000 in punitive damages. (Tr. II at 249–50.) The trial court judgment dated June 11, 1990 also assessed costs and pre-judgment interest against the Debtor which the plaintiff shows at $13,618.35 and $49,400.00 respectively.

On April 3, 1991 the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code in the Northern District of Texas, Amarillo Division. Mr. Stanley timely filed this adversary proceeding to determine if the Oklahoma state court judgment is non-dischargeable under § 523(a)(6). In the proposed pre-trial order submitted on September 5, 1991, Mr. Stanley alleged that the judgment was not dischargeable under § 523(a)(4) as well. However, the time for filing objections to the dischargeability of a debt under § 523(a) expired August 5, 1991 and the file does not contain amended pleadings alleging a complaint under § 523(a)(4).

## DISCUSSION

A. Mr. Stanley's § 523(a)(4) complaint was not timely filed and, thus, it is barred.

██ In a Chapter 7 case, the Federal Rules of Bankruptcy Procedure require that an objection to the dischargeability of a debt under § 523(a)(2), (4) or (6) be filed before the bar date. Fed.R.Bankr.P. 4007(c). If an objection is not filed by that date, the debt is discharged. *Id. Citizens Fidelity Bank & Trust Co. v. Wahl (In re Wahl)*, 28 B.R. 688 (Bankr.W.D.Ky.1983). Mr. Stanley failed to object to the dischargeability of the Oklahoma state court judgment under § 523(a)(4) before the August 5, 1991 bar date, nor did he amend his original complaint to add that Section prior to the bar date.

Although the § 523(a)(4) claim was not pled timely, plaintiff argues that both parties agreed to hear it in the pre-trial order presented to this court and, thus, it was tried by consent. The Debtor asserted at oral argument that he did not consent to try that issue. Since the § 523(a)(4) complaint was not filed before the bar date, the court finds it is not properly before the court.

B. Mr. Stanley's Complaint under § 523(a)(4).

Even if the parties tried the § 523(a)(4) assertion by consent, the state court judgment is not excepted from the discharge under § 523(a)(4). The Bankruptcy Code provides that a debtor may not be discharged from a debt incurred by fraud or defalcation while acting in a fiduciary capacity. § 523(a)(4). In making its determination on non-dischargeability under this section the court must first examine whether the Debtor was a fiduciary within the meaning of § 523(a)(4) when the debt was incurred. Then, if the Debtor was acting as a fiduciary, the court must determine whether or not he incurred the debt by fraud or defalcation.

██ In keeping with the policy of giving an honest debtor a fresh start, exceptions to discharge are strictly construed and evidence must be viewed in the light most favorable to the debtor. *City of Colton v. Johnson (In re Johnson)*, 61 B.R. 541, 545 (Bankr.D.S.D.1986). Whether a fiduciary relationship exists is a question of federal law, but reference to state law is necessary to determine whether a trust exists in the strict federal sense. *Donohoe v. Hurbace (In re Hurbace)*, 61 B.R. 563, 565 (Bankr.W.D.Tex.1986).

The broad definition of "fiduciary"—a relationship involving confidence, trust, and good faith—is inapplicable in the dischargeability context. *Lewis v. Short (In re Short)*, 818 F.2d 693, 695 (9th Cir.1987). "Thus, constructive or implied trusts are excluded, but statutory trusts are not." *Id.*

Although there are no cases directly on point, *Fox v. Karlin (In re Karlin)*, 103

B.R. 236 (Bankr. 9th Cir.1989) sheds some light on the issue. In *Karlin,* the court found that the mere existence of a doctor-patient relationship does not establish a fiduciary duty. *Id.* at 238.

■ The Oklahoma authority Mr. Stanley cited is inapplicable to the case at hand since it does not establish either a statutory or express fiduciary duty between doctor and patient. *See State v. Pearson,* 767 P.2d 420 (Okla.1989); *State v. Braswell,* 663 P.2d 1228 (Okla.1983); *State v. Miskovsky,* 62 Okla.B.J. 2737, 824 P.2d 1090 (1991). It is not enough to analogize cases involving a doctor to cases involving an attorney, since the latter cases deal with express statutory and rule provisions. The court's search did not find an Oklahoma statute charging the Debtor with a fiduciary duty in the relationship which is the basis of the Oklahoma state court judgment. Further, the court found no case law holding that a doctor is a fiduciary under § 523(a)(4). Therefore, the court holds that the Debtor is not a fiduciary under § 523(a)(4).

C. Debtor's actions were willful and malicious so as to except the debt owed to Mr. Stanley from discharge.

The bankruptcy court has exclusive jurisdiction to determine the dischargeability of a debt. 28 U.S.C. § 157(b). *See also Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). The bankruptcy court must look to the entire record to determine the wrongful character of the act. *Norton v. Dean (In re Dean),* 79 B.R. 659, 661 (Bankr.N.D.Tex.1987). Collateral estoppel applies to facts actually litigated and necessarily decided in the prior judicial proceeding. *Harold V. Simpson & Co. v. Shuler (In re Shuler),* 722 F.2d 1253, 1256 (5th Cir.1984). Mr. Stanley must establish his position by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

1. *"Willful & Malicious" under § 523(a)(6).*

In order to fall within the exception of section 523(a)(6), the injury to an entity or property must have been willful and malicious. An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will. The word "willful" means "deliberate or intentional," a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

3 *Collier on Bankruptcy* ¶ 523.16 (15th ed. 1991) (citations omitted).

The Fifth Circuit adopted this definition of willful and malicious in *Kelt v. Quezada (In re Quezada),* 718 F.2d 121, 123 (5th Cir.1983).[5] *See also Seven Elves, Inc. v. Eskenazi,* 704 F.2d 241, 245 (5th Cir.1983). However, neither the Fifth Circuit nor a lower court within the Fifth Circuit has applied this definition to determine if a doctor's actions which caused an injury were willful and malicious.

Judge McGuire, Chief Bankruptcy Judge for the Northern District of Texas, applied the definition to the actions of a social worker. *See Dean,* 79 B.R. at 662. In *Dean,* the plaintiff held a state court judgment for compensatory damages against the debtor for engaging in sexual relations with the plaintiff's wife. The judgment contained relief for both compensatory and exemplary damages. The court found that the debtor's acts were willful and malicious, that the sexual acts were deliberate or intentional, and that they were done in conscious disregard of the debtor's duties and without just cause or excuse. Therefore, the debtor caused the compensatory damages in question. *Id.* at 662. The state court exemplary damages awarded in *Dean* were predicated on "reckless disregard" conduct, as opposed to deliberate and intentional conduct as required under § 523(a)(6). However, since the conduct giving rise to the compensatory damages

**5.** The 1991 definition (above) is identical with that adopted by the 5th Circuit in 1983.

was willful and malicious, the exemplary damages flowed from that conduct. Thus, the court held that the exemplary damages were non-dischargeable as well. *Id.* at 663.

### 2. *Willful and Malicious applied to medical malpractice judgments.*

*First Nat'l Bank v. Franklin, (In re Franklin),* 726 F.2d 606 (10th Cir.1984) is the seminal case applying the willful and malicious standard to a debt arising from a medical malpractice judgment. In *Franklin,* Paul Anthony Sanchez was admitted to the hospital for an appendectomy. The debtor, an osteopathic surgeon, performed the operation. A cardiac arrest occurred during surgery and Sanchez suffered extensive brain damage. *Id.* at 608. The plaintiff Bank, as guardian of Sanchez' estate, obtained a state court judgment for $912,000 in compensatory and $6,850 in punitive damages. *Id.* The bankruptcy court relied on the transcript of the state court proceeding, even though there were ambiguities, conflicting evidence, and a general jury verdict. *Id.* The debtor testified at the bankruptcy hearing. *Id.* at 609. The bankruptcy court held that, under § 17 a(8) of the Bankruptcy Act [6] (the forerunner of § 523(a)(6)), the debtor's actions were willful and malicious so as to except the plaintiff's judgment from discharge. *Id.* The Tenth Circuit affirmed the bankruptcy court's holding. *Id.* at 611.

In its opinion, the Tenth Circuit stated that a finding of willful and malicious requires the willful doing of an act which necessarily leads to injury. *Id.* at 610. The Tenth Circuit agreed with the bankruptcy court finding that the debtor's actions amounted to "a willful disregard of that which he knew to be his duty and a complete and total disregard of acceptable medical practice." The appellate court stated:

> [T]his court does not intend to imply that appellant performed the surgery in an

effort to bring about the cardiac arrest which caused such drastic injury to Sanchez. However, there is little doubt that appellant intended the acts he did perform, which acts performed in the manner and under the conditions present in this particular situation necessarily resulted in the injury.

*Id.* This was sufficient to support a finding of willful and malicious conduct under § 17 of the Bankruptcy Act. *Id.*

Mr. Franklin filed for relief under Chapter 7 of the Bankruptcy Act in December 1977. The Bankruptcy Code Congress passed in 1978 became effective on October 1, 1979. The Bankruptcy Reform Act of 1978. Pub.L. No. 95–598 § 402. The Bankruptcy Code applies to all cases filed on or after its effective date but pending cases were to be decided under the Bankruptcy Act. *Id.* § 403. Thus the *Franklin* court decided the dischargeability issue under § 17 a(8) of the Bankruptcy Act. However, writing in 1984, the court took great pains to equate § 17 a(8) of the Bankruptcy Act with § 523(a)(6) of the Bankruptcy Code. Clearly the *Franklin* court intended its decision to apply to Bankruptcy Code cases as well as to Bankruptcy Act cases.

The Sixth Circuit applied this same definition of willful and malicious in determining that a debtor-podiatrist's actions giving rise to a consent judgment constituted willful and malicious conduct. *Perkins v. Scharffe (In re Scharffe),* 817 F.2d 392 (6th Cir.1987); *cert. denied,* 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987). Interestingly, the concurring opinion written by Judge Engel observed that the standard applied seemed more of a "reckless disregard" standard than a "willful and malicious" standard. *Id.* at 394. While Judge Engel did not necessarily agree that the standard announced in *Franklin* was a correct interpretation of § 523(a)(6), he stated

---

6. Section 17 (11 U.S.C. § 35) provided:
   § 17 *Debts Not Affected by a Discharge.*
   a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ...

(8) are liabilities for willful and malicious injuries to the person or property of another. . . .

"it is more important that the law be settled than settled right." *Id.*

The *Scharffe* court noted that "[t]he bankruptcy courts that have decided this matter have been divided as to whether the statute requires an intentional act that results in injury or an act with intent to cause injury.... The circuit courts, however, which have addressed this question have adopted the looser standard." *Id.* at 393–394 (citations omitted).

■ No evidence was offered at hearing as to why the Debtor moved from Oklahoma, which is in the Tenth Circuit, to Texas, which is in the Fifth Circuit. *Franklin* is binding precedent on this issue in the Tenth Circuit. There is no binding precedent on this issue in the Fifth Circuit. The result in this case should not change because the Debtor moved to a different circuit. In *Quezada,* the Fifth Circuit adopted the same definition of willful and malicious used by the Tenth Circuit in *Franklin.* For these reasons, this court follows *Franklin.*

3. *The Debtor's actions were willful and malicious, and Mr. Stanley's Judgment is non-dischargeable.*

■ The court reviewed the record in the Oklahoma state court proceeding. Those records show that three doctors testified that the Debtor's treatment was below the community standard and that his care was grossly negligent. The Debtor knew it was his duty to distinguish Mr. Stanley's nerve from his tendons; however, the testimony of all three doctors demonstrated that the Debtor was in error as to the proximity of the nerve and the tendon. The Chairman of the Department of Orthopedic Surgery at the University of Oklahoma Medical School testified that in his opinion the pre-surgical notes were prepared after the surgery. The Debtor did not tell Mr. Stanley that the Debtor's staff privileges at the Enid Hospital had been revoked. Mr. Stanley lost 75% of the use of his hand as a direct result of the actions of the Debtor.

The court finds that the Debtor's conduct amounted to a willful disregard of that which he knew to be his duty and a total disregard of acceptable medical practice thereby constituting "willful and malicious" conduct under § 523(a)(6). *See Franklin,* 726 F.2d at 608.

■ The Debtor's counsel correctly pointed out that the jury finding of exemplary damages was based on a finding that the Debtor's actions were "wanton or reckless." Okla.Stat. tit. 23, § 9 (1990). However, since this court finds that the actions of the Debtor were "willful and malicious" and the exemplary damages arose from the same conduct as the compensatory damages, the exemplary damages, costs and interest are also non-dischargeable. *See Dean,* 79 B.R. at 663.

### CONCLUSION

Mr. Stanley failed to object timely to the discharge of the judgment under § 523(a)(4). Under § 523(a)(6), the Debtor's actions showed a willful disregard of that which he knew to be his duty and a complete disregard of acceptable medical practice. Thus, his actions were willful and malicious, and the Oklahoma state court judgment is not discharged.[7]

7. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052. This Memorandum will be published.