In re Michael ASSEVERO, M.D. a/k/a d/b/a Michael Assevero, M.D., P.C., Debtor.

Carolyn E. SMITH, Plaintiff,

v.

Michael ASSEVERO, M.D. a/k/a d/b/a Michael Assevero, M.D., P.C., Defendant.

Bankruptcy No. A93–74073–REB. Adv. No. 94–6421.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

March 2, 1995.

---

Robert O. McCloud, Jr., Carter & Ansley, Atlanta, GA, Melinda Haynie Crouch, Zimmer & Zimmer, Wilmington, NC, for plaintiff.

Randal A. Mangham, Atlanta, GA, for defendant.

### *ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT*

ROBERT E. BRIZENDINE, Bankruptcy Judge.

This adversary proceeding is before the Court on cross motions for summary judgment. Plaintiff seeks a determination that a certain unliquidated liability of Defendant–Debtor be excepted from discharge evidently pursuant to 11 U.S.C. § 523(a)(6). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Upon consideration of the motions and the record, and for the reasons set forth below, the Court concludes that both motions should be denied.

Plaintiff's claim is based on a state court default on her complaint against Debtor, a

physician, for injuries resulting from alleged medical negligence.[1] She contends that Debtor's negligent actions in performing certain surgery and providing post-operative care caused her pain and suffering and injuries, which ultimately led to the loss of function in her left kidney and necessitated its subsequent removal. Plaintiff argues that her medical malpractice claim is nondischargeable because Debtor's conduct amounts to a willful disregard of his duty and a total disregard of acceptable medical practice. Although Debtor may not have actually intended to bring about her injuries, she asserts, nevertheless, he intended to perform certain acts in a manner and under conditions, then present, which necessarily led to her injuries.

Plaintiff states that Debtor, who held himself out as a specialist in gynecology and obstetrics, advised her that she needed a complete hysterectomy. Thereafter, in performing this surgery, she claims that Debtor injured the ureter to Plaintiff's left kidney. Although a post-operative test indicated the existence of this condition, Debtor failed to recognize same and such failed diagnosis, Plaintiff alleges, ultimately led to kidney damage. Instead of properly analyzing the test or referring the matter to a specialist, Plaintiff claims Debtor performed unnecessary laparoscopic surgery during which he allegedly injured her small bowel. As a result of Debtor's failure to treat her condition properly, Plaintiff claims, her kidney eventually had to be removed.

She asserts that Debtor's conduct was deliberate and intentional and necessarily led to her injuries. It demonstrates both his lack of knowledge and skill, in spite of the fact that he held himself out as a specialist in such surgical procedures, as well as his total disregard for her well being. Further, she states that Debtor's inaction, following his receipt of the test results, was motivated by an intentional desire to conceal his errors or resulted from a complete failure to use proper care in reviewing and following through with the tests.[2]

Debtor disputes the factual allegations giving rise to Plaintiff's claim. Through uncontroverted affidavit, he avers that he had the proper credentials to perform the surgical services described herein. Following the hysterectomy, he states that he ordered an intravenous pyelogram (IVP test) and, thereafter, performed a diagnostic laparoscopy to determine the cause of Plaintiff's complaints of continuing pain. Apparently, several months elapsed between the hysterectomy and laparoscopy. Neither the failure to receive the test results prior to the laparoscopy nor this surgical procedure itself, he avers, caused the blocked ureter or any injury to the Plaintiff. Further, he claims that he did not injure Plaintiff's small bowel, but that he confirmed the existence of multiple pelvic adhesions during the laparoscopy and successfully removed same from the bowel.

In addition, Debtor submitted an expert opinion through the uncontroverted affidavit of Dr. Robert L. Williams in which he states, among other things, that Debtor did not deviate from the required standard of care in his treatment of Plaintiff.[3] Further, this doctor claims that Plaintiff's problems resulted from other causes such as certain gynecological complications and risks arising from the general state of her overall health, in addition to her predisposition for a condition known as multiple pelvic adhesion formation. Dr. Williams avers that all conditions were appropriately diagnosed and treated by Debtor.

Plaintiff contends that Debtor's failure to insure that the ureter, which was outside the operative field, was not injured, as well as his failure to provide proper post-operative care, by ignoring or failing to recognize the significance of the test results which allowed her

1. The complaint alleged causes of action asserting negligence, respondeat superior, nondelegable duty, apparent or ostensible agency, and corporate negligence.

2. She also claims that he fled North Carolina in an attempt to avoid judgment, though Debtor denies this assertion.

3. Although a curriculum vitae is referenced in the affidavit as Exhibit "A," no such document is attached in the file.

condition to worsen substantially, amounts to willful and malicious conduct under 11 U.S.C. § 523(a)(6). *See generally Perkins v. Scharffe (In re Scharffe ),* 817 F.2d 392 (6th Cir.), *cert. denied,* 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987); *Corsi v. Berman (In re Berman ),* 154 B.R. 991, 1003 (Bankr. S.D.Fla.1993); *see also First National Bank v. Franklin (In re Franklin ),* 726 F.2d 606 (10th Cir.1984). This section provides as follows:

> A discharge under section 727 ... does not discharge an individual debtor from any debt—
>
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6). Plaintiff must prove these elements by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ Under this provision, two distinctive mental traits must be established. First, as discussed below, "willful" is defined as intentional or deliberate. The second part of the test, maliciousness, is defined in terms of wrongfulness and without just cause or excuse. Although a finding of recklessness or reckless disregard will establish malice, it is not sufficient to show willfulness. *See Blashke v. Standard (In re Standard ),* 123 B.R. 444, 449 (Bankr.N.D.Ga.1991). Further, constructive or implied malice may be established by showing that a debtor proceeded to perform an act with knowledge that it would harm the interest of another. Knowledge may be proven by inference and a specific intent to harm the plaintiff or actual ill-will is not required under the second part of Section 523(a)(6). *See Lee v. Ikner (In re Ikner ),* 883 F.2d 986, 991 (11th Cir.1989); *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1263 (11th Cir.1988).

In construing the meaning of willfulness, however, two competing lines of authority have developed. Some courts interpret this provision as requiring proof of intent to cause injury. Others have concluded that an intent to perform the act, which necessarily leads to or results in an injury, is all that is

necessary to establish willfulness under Section 523(a)(6). Using this latter definition of willfulness, courts have held, with respect to medical malpractice claims, that the willful disregard of a known duty of care and a complete and total disregard of acceptable medical practice constitutes willful and malicious conduct. *See Kawaauhau v. Geiger (In re Geiger ),* 172 B.R. 916, 922–23 (Bankr. E.D.Mo.1994); *Stanley v. Cole (In re Cole ),* 136 B.R. 453, 459 (Bankr.N.D.Tex.1992); *see also Franklin, supra,* 726 F.2d at 610. In other words, medical treatment can be so far below the standard level of care that it is considered equivalent to that certain type of behavior which supports a finding of nondischargeability under Section 523(a)(6). *See e.g. Geiger, supra,* 172 B.R. at 923.

■ This Court has previously determined that in construing "willfulness" under Section 523(a)(6), the proper focus should be on the intent to cause the injury rather than the intent to perform the act which results in an injury. *See generally Walters v. Betts (In re Betts ),* 174 B.R. 636, 649–50 (Bankr.N.D.Ga. 1994); *see also Eaves v. Hampel (In re Hampel ),* 110 B.R. 88, 92–93 (Bankr.M.D.Ga. 1990); *accord American Cast Iron Pipe Co. v. Wrenn (In re Wrenn ),* 791 F.2d 1542, 1544 (11th Cir.1986); *Pechar v. Moore,* 98 B.R. 488 (D.Neb.1988). Thus, even if Debtor intentionally performed or neglected to perform the acts in question such that he breached his professional duty of care by disregarding an unreasonable risk which led to Plaintiff's injury, a "willful and malicious injury" has not been established unless it is shown that he intended to cause her injury, or knew that such injury was substantially certain to result from his conduct.

By contrast, decisions such as *Franklin, Perkins,* and *Cole, supra,* which only require an intentional act that results in injury, fail to address a debtor's knowledge in relation to the certainty or inevitability of injury resulting from his behavior as required by Section 523(a)(6).[4] In *Franklin, supra,* the Tenth Circuit specifically stated that it was not implying that the debtor intended to

---

4. Cases such as *Berman, supra,* as cited by Plaintiff, do not provide a thorough exploration of this divergence in interpretation of willfulness under Section 523(a)(6). 154 B.R. at 1003.

bring about the plaintiff's injury, but it nonetheless concluded that the debtor's conduct was willful and malicious based on the willful disregard of his duty that necessarily led to harm. 726 F.2d at 610. This standard has been criticized as tantamount to a *per se* rule barring discharge of medical malpractice claims. *See Geiger, supra,* 172 B.R. at 923 n. 8.

■ In addition to the criticism discussed above, the viability as legal precedent of *Franklin, supra,* and, therefore, *Perkins, supra,* and *Cole, supra,* which rely on *Franklin,* is questionable. First, the Tenth Circuit has limited the application of *Franklin* to cases arising under the old Bankruptcy Act of 1898. Secondly, and in any event, the Tenth Circuit has recognized a different test under Section 523(a)(6) of the Bankruptcy Code of 1978 as expressed in *Farmers Insurance Group v. Compos,* 768 F.2d 1155 (10th Cir. 1985).[5] *See MCorp Management Solutions, Inc. v. Thurman (In re Thurman* ), 901 F.2d 839, 841 (10th Cir.1990); *see also Dorr, Bentley & Pecha, CPA's, P.C. v. Pasek (In re Pasek* ), 983 F.2d 1524, 1527 (10th Cir.1993). Thirdly, *Franklin, supra,* 726 F.2d at 610, draws upon the standard of wanton, reckless, or willful disregard of duty set forth in *Den Haerynck v. Thompson,* 228 F.2d 72, 74 (10th Cir.1955), but this rationale was overruled by the enactment of the Bankruptcy Code. *See Gilchrist v. Pattison (In re Pattison* ), 132 B.R. 449, 452–53 (Bankr.D.N.M.1991); *Pargas v. Poore (In re Poore* ), 37 B.R. 246, 249–50 (Bankr.D.N.M.1982); *see also United*

*Bank of Southgate v. Nelson,* 35 B.R. 766, 769, 774 (N.D.Ill.1983), cited in *Rebhan, supra,* 842 F.2d at 1263; *accord Compos, supra,* 768 F.2d at 1157–58. As a result, maliciousness, but not willfulness, embraces reckless disregard under Section 523(a)(6).[6]

■ Upon review of the statutory language and case authority, and consistent with congressional intent, and as previously held by this Court, willfulness under Section 523(a)(6) requires a showing that Debtor acted knowingly with respect to the harm caused as a result of his conduct. Such behavior is more culpable than acting negligently, even egregiously so, or acting recklessly. *Compare Rebhan, supra,* 842 F.2d at 1262–63; *Wrenn, supra,* 791 F.2d at 1544. Hence, even if Debtor willfully and wrongfully failed to perform his duties in compliance with the proper standard of care, it still must be established that he either intended the consequences or knew that injury was substantially certain to result from his conduct. Certainty is evaluated in terms of Debtor's knowledge or appreciation of the substantial likelihood of Plaintiff suffering an injury as a consequence of his acts. *See Betts, supra,* 174 B.R. at 649–50; *Hampel, supra,* 110 B.R. at 91–93. Foreseeability or merely knowing that harm might result is not the degree of culpability which supports a determination of nondischargeability under Section 523(a)(6).

■ There is no reason such a standard should be applied differently in the context of medical malpractice claims.[7] Accordingly,

**5.** In *State Farm Mutual Automobile Insurance Co. v. Fielder (In re Fielder* ), 799 F.2d 656 (11th Cir.1986), the Eleventh Circuit chose not to follow *Compos, supra,* which involved debts arising from drunk driving, finding instead that a subsequent congressional amendment adding Section 523(a)(9) was relevant as a clarification of the nondischargeability standard in that specific context.

**6.** Even decisions such as *Geiger, supra,* which criticize *Franklin, supra,* adopt a standard of willful and malicious based on egregious behavior, utter incompetence, or total disregard for medical standards. 172 B.R. at 923. No explanation, however, is provided concerning how proof of such "malicious" conduct also establishes willfulness in terms of knowledge of the certainty of injury, such that under the law the debtor can be deemed to have desired that result.

**7.** The court in *Geiger, supra,* found that, at least in the Eighth Circuit, the applicable standard depends upon whether the liability arises in the context of the conversion of secured property, which requires a specific intent to injure, or in the context of a personal injury, which requires a lesser showing. 172 B.R. at 921. As observed in *Nelson, supra,* 35 B.R. at 772, 776, however, maliciousness was held to be satisfied by reckless disregard in part due to the impossibility of proving a specific intent to harm in connection with the conversion of secured property, as compared with proving intentional harm in relation to injury to a person or property of another. As noted above, in addition to proving specific intent to injure, willfulness may be satisfied by proof that the debtor knew that the resulting consequences were certain and, nonetheless, proceeded with the act in question. In any event, this Court finds no principled basis for using different stan-

Plaintiff may establish that her medical malpractice claim is nondischargeable under Section 523(a)(6), upon a showing that Debtor knew that injury was substantially certain to occur as a result of his lack of qualifications or his delivery of care far below acceptable professional standards in regard to either performing the operation in question or in providing post-operative and/or remedial treatment, which may have included efforts to conceal his previous mistakes.

 Consistent with these standards, the evidence supports an inference that in causing Plaintiff's injuries, Debtor was negligent or recklessly disregarded the risk created in regard to her well being. Although such an inference may satisfy the required showing of maliciousness, it does not establish, with respect to willfulness, the necessary degree of knowledge or intent in relation to such injury as required under Section 523(a)(6). *See Wrenn, supra,* 791 F.2d at 1544. Undoubtedly, such a standard may, in certain instances, shield the dischargeability of a liability arising from appalling or reckless behavior. This Court, however, must employ the legal standard enacted into law by Congress and, therefore, only liability arising as a result of more blameworthy conduct is potentially nondischargeable. *Accord Perkins v. Scharffe, supra,* 817 F.2d at 393–94 (Engel, J., concurring). Moreover, dischargeability exceptions are to be strictly construed. *Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1579 (11th Cir.1986).

 Having set forth the applicable legal standard, the Court turns to a review of the factual record.[8] As noted above, Debtor disputes the underlying basis of Plaintiff's claim and has offered expert testimony through affidavit. Plaintiff has submitted no independent evidence in the form of an expert opinion or otherwise. Instead, she relies primarily upon the allegations in her state court complaint which she claims are deemed admitted due to Debtor's default and given the findings of the state court in denying Debtor's motion to set it aside.[9]

 Dischargeability determinations under Section 523(a)(6) are exclusively committed to the bankruptcy court, although preclusive effect may be accorded to prior state court findings of fact in appropriate circumstances. A review of the record, however, reveals that the issue to be resolved herein is not identical to those matters determined in the prior action. Plaintiff's state court claims, which even if deemed admitted based on Debtor's default, are framed principally in terms of negligence theories. As noted above, this Court's analysis under Section 523(a)(6) is concerned with willful and intentional injury and, as discussed above, employs an entirely different standard of culpability. Thus, the record does not establish the requisite intent within the meaning of this provision. *Accord Kawaauhau v. Geiger (In re Geiger),* 114 B.R. 649 (Bankr.E.D.Mo. 1990).

 Issues of liability, however, are different from nondischargeability. Because Debtor's liability is based on a default, special concerns must be carefully reviewed and considered, especially in terms of procedural fairness. *See generally Betts, supra,* 174 B.R. at 644–48; *see also Sciarrone v. Brownlee (In re Brownlee),* 83 B.R. 836, 839 (Bankr.N.D.Ga.1988). As noted above, after entry of default the state court denied a motion to set it aside. In its order filed on May 24, 1993, the Superior Court of New Hanover County, North Carolina found that setting aside the default would result in prejudice to Plaintiff and that Debtor's failure to

dards depending on the factual context in applying Section 523(a)(6).

8. Both parties have failed to file a statement of material facts to which they assert that there is no genuine issue to be tried. *See* Local Rule 220–5(b), N.D.Ga., applicable herein through B.L.R. 705–2, N.D.Ga.

9. Debtor scheduled Plaintiff's claim as contingent and unliquidated; whereas, Plaintiff filed a proof of claim in the amount of $500,000 as partially secured and partially unsecured. Although Debtor filed a motion to value the claim stating that the only disputed issue was its amount, this motion was later voluntarily withdrawn. In her brief herein, Plaintiff requests that she be allowed to have her claim liquidated in North Carolina state court. Once this Court enters its determination as to nondischargeability, Plaintiff may then move for modification of the automatic stay to do so.

file an answer constituted gross neglect.[10] Further, the ruling was entered after the court heard argument from counsel for both sides. In paragraph 6 of his response to Plaintiff's requests for admission herein, Debtor disputes the truthfulness of the factual allegations in the order, but no grounds have been advanced which suggest the existence of any improper circumstances surrounding the entry of either the order or the default.

Based on a review of the record, it appears that a default was entered and after a hearing, the state court determined that insufficient grounds existed to set it aside. Although the issue of liability may not have been actually litigated, nothing in the record demonstrates that Debtor was effectively denied a meaningful opportunity to defend himself in response to Plaintiff's allegations and be heard. No irregularity or infirmity has been alleged in connection with the entry of said default or order and none is apparent from the record. In accordance with applicable authority, the Court finds and concludes that further factfinding on the issue of liability, as distinguished from dischargeability, will be precluded and such matter will not be retried in this forum. This ruling, however, is conditioned upon presentation of competent evidence of the default and order denying motion to have same set aside in accordance with the Federal Rules of Evidence.

■ With regard to issues under Section 523(a)(6), even if Debtor intentionally performed the acts in issue while knowingly disregarding his professional duty of care, Plaintiff has failed to show the nonexistence of a genuine issue of material fact in terms of whether Debtor, in performing the acts in issue, had the necessary state of mind or awareness in relation to the certainty of Plaintiff's resulting injuries. Likewise, Debtor has failed to establish as a matter of law

that he did not have the requisite knowledge or intent in connection with those injuries and their certainty as to preclude a finding of willful and malicious injury. The present record could support several inferences as to Debtor's intent in connection with such injuries and the likelihood of occurrence. Such matters, however, relating to Debtor's intent or knowledge in regard to the certainty of injury, are inappropriate for disposition by motion for summary judgment and thus, genuine issues of material fact remain for resolution herein.

Based on the above reasoning, the Court concludes that Plaintiff has failed to establish that the liability in question is nondischargeable as a matter of law. Similarly, Debtor has not shown that the debt in question is dischargeable and that he is entitled to a judgment as a matter of law. Therefore, it is

**ORDERED** that Plaintiff's motion for summary judgment is **denied,** and it is

**FURTHER ORDERED** that Debtor's motion for summary judgment is **denied.**

This matter will be set for pretrial conference upon separate written notice.

The Clerk is directed to serve a copy of this Order upon counsel for Plaintiff, counsel for Defendant, and the Chapter 7 Trustee.

**IT IS SO ORDERED.**

___

10. A copy of this order is included in the record attached to certain unanswered requests for admission, but it is not certified or otherwise verified in any manner, although Debtor has evidently admitted that the copy attached to the original request for admission is true and accurate. A copy is also attached to Plaintiff's proof of claim. The findings of fact in this order primarily relate to the parties' actions after Plaintiff's prosecution of her claim commenced and do not address the underlying factual basis of the claim.