**In re George M. COLE, Debtor.**

**Leland Stanley, Plaintiff,**

**v.**

**George M. Cole and Enid Bone and Joint Clinic, Inc., Defendants.**

**Bankruptcy No. 91–20137–7.**
**Adversary No. 91–2014.**

United States Bankruptcy Court,
N.D. Texas,
Amarillo Division.

Nov. 28, 2000.

Roger Cox, Sanders Baker, P.C., Amarillo, TX, for plaintiff.

Steven Lee Hoard, Mullin, Hoard & Brown, Amarillo, TX, for defendant.

## MEMORANDUM OPINION

ROBERT L. JONES, Bankruptcy Judge.

This adversary proceeding was remanded by the district court with instructions to reconsider whether George M. Cole's actions constitute a willful and malicious injury to Leland Stanley under 11 U.S.C. § 523(a)(6) in light of the Supreme Court's holding in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). This court was specifically instructed to conduct an evidentiary hearing to allow Cole to offer any testimony or evidence on the issue of whether he committed a deliberate tortious injury and not merely a deliberate or intentional act that led to injury, or that Cole was negligent, grossly negligent, or reckless. Such evidentiary hearing was held on September 11, 2000.

This court has jurisdiction of this matter under 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(I). This memorandum opinion contains the court's findings of fact and conclusions of law. FED.R.BANKR.P. 7052 and FED. R.BANKR.P. 9014.

### Background

In August of 1987, the Debtor, George Cole, D.O., performed ligament reconstruction surgery on Leland Stanley's left hand. During surgery, Dr. Cole cut Mr. Stanley's median nerve which resulted in the loss of seventy-five percent of the use of his hand. Stanley filed a medical malpractice action against Cole in the District Court of Garfield, Oklahoma, and, on June 11, 1990, a judgment was entered against Cole and the co-defendant, Enid Bone & Joint Clinic, Inc.,[1] in the amount of $250,000.00 in actual damages and $750,000.00 in punitive damages. The punitive damages award was based on the

---

1. Enid Bone and Joint Clinic, Inc., is a professional corporation that Cole formed in Oklahoma. Cole practiced under the corporate name while in Oklahoma.

jury's finding that Cole's actions were "wanton and reckless."

On April 3, 1991, Cole filed a petition for relief under Chapter 7 of the Bankruptcy Code in the Northern District of Texas, Amarillo Division. Stanley filed this adversary proceeding asserting that the Oklahoma state court judgment is nondischargeable under § 523(a)(6) of the Bankruptcy Code. Trial was held before the bankruptcy court on February 2, 1992. The bankruptcy court, Judge John C. Akard, found Cole's actions to be "willful and malicious," and declared the Oklahoma judgment nondischargeable.

Cole appealed to the United States District Court for the Northern District of Texas and raised the following issues on appeal: (1) whether the bankruptcy court erred in holding Stanley's judgment against Cole to be nondischargeable because there was no evidence to support a finding of "willful and malicious" conduct on the part of Cole; (2) whether the bankruptcy court erred in holding the judgment to be nondischargeable because there was no legally sufficient evidence to support a finding of "willful and malicious" conduct on the part of Cole; (3) whether the bankruptcy court erred as a matter of law in holding the judgment nondischargeable because the bankruptcy court applied the wrong legal standard in construing the meaning of "willful and malicious"; (4) whether the bankruptcy court erred in admitting into evidence, over Cole's hearsay objection, testimony from the prior Oklahoma state court trial because prior testimony constitutes hearsay, and there was no showing of "unavailability of the witnesses" under Rule 804(a) of the Federal Rules of Evidence; (5) whether the bankruptcy court erred by partially basing its finding of nondischargeability on the doctrine of collateral estoppel; (6) whether the evidence establishes that Cole actually intended to injure Stanley; (7) whether the evidence establishes that Cole's conduct constituted a "wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse"; and (8) whether the bankruptcy court erred in finding that Cole's conduct "amounted to 'a willful disregard of that which he knew to be his duty' and a complete and total disregard of accepted medical practice."

On June 27, 1995, the district court, Judge Mary Lou Robinson, remanded the case to this court for rehearing on the sole issue of whether the prior testimony of three doctors was admissible under the former testimony exception to the hearsay rule, FED.R.EVID. 804(b)(1), or under the other exceptions section of such rule, FED.R.EVID. 804(b)(5). The district court stated that "the evidence, if admissible, overwhelmingly supports the bankruptcy court's conclusion," but, "if the evidence is not admissible, then the bankruptcy court's finding is not supported by the evidence." As to all other issues, the findings and conclusions of the bankruptcy court were affirmed.

On remand, the bankruptcy court, by its Memorandum of Opinion entered January 5, 1996, found that the prior testimony was admissible, consistent with the Federal Rules of Evidence, and, in addition, collaterally estopped Cole from re-litigating the willful and malicious issue. The bankruptcy court issued its order reaffirming the prior holding which declared the Oklahoma state court judgment nondischargeable under § 523(a)(6).

Cole appealed again to the district court, identifying the following issues on appeal: (1) whether the bankruptcy court erred in holding Stanley's judgment against Cole to be nondischargeable because there was no evidence to support a finding of "willful and malicious" conduct on Cole's part; (2) whether the bankruptcy court erred in holding the judgment against Cole to be nondischargeable because there was no legally sufficient evidence to support a finding of "willful and malicious" conduct on Cole's part; (3) whether the bankruptcy court erred in basing its finding of nondischargeability on the doctrine of collateral

estoppel because the issue of "willful and malicious" was neither "actually litigated" nor "necessarily decided" in the prior Oklahoma state court case; (4) whether the bankruptcy court erred in holding the debt nondischargeable on both collateral estoppel grounds and pursuant to an independent fact finding, while preventing Cole from offering any evidence to rebut Stanley's evidence; (5) whether the bankruptcy court erred in holding that collateral estoppel prevented Cole from offering any evidence to rebut Stanley's evidence; (6) whether the bankruptcy court erred in reaffirming its prior judgment; (7) whether the bankruptcy court erred in holding the debt nondischargeable because it applied the wrong legal standard in construing the meaning of "willful and malicious"; (8) whether the bankruptcy court erred in admitting into evidence, over Cole's objection, testimony from the Oklahoma state court trial; (9) whether the evidence established that Cole actually intended to injure Stanley; (10) whether the evidence established that Cole's conduct constituted a "wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse"; (11) whether the bankruptcy court erred in finding that Cole's conduct amounted to a willful disregard of that which he knew to be his duty and a complete and total disregard of accepted medical practice; and (12) whether the bankruptcy court erred in finding that Cole's conduct constituted a willful and malicious injury.

On his second appeal, the district court, Judge Mary Lou Robinson, issued a Memorandum Opinion and Order dated April 12, 2000, affirming in part and vacating in part the bankruptcy court's ruling. Three issues are addressed: (1) the applicable legal standard on "willful and malicious" as established by the United States Supreme Court in its 1998 opinion, *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90; (2) whether the bankruptcy court erred in admitting the testimony of the three doctors from the Oklahoma state court; and (3) whether the bankruptcy court erred in only admitting testimony from the Oklahoma state court trial and refusing to allow evidence from Cole. The district court affirmed the bankruptcy court's ruling, save for the bankruptcy court's finding that Cole's actions constituted a willful and malicious injury. The bankruptcy court's nondischarge order was therefore vacated and the case remanded for further consideration in light of the decision in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).[2]

On September 11, 2000, this court held a hearing in accordance with the district court's instructions. After hearing oral argument concerning the new legal standard for a "willful and malicious injury" referenced in 11 U.S.C. § 523(a)(6) and allowing Cole to present evidence rebutting the assertion that his conduct and the resulting injury were "willful and malicious," the court took the matter under advisement.

**2.** This court notes that the Ninth Circuit, in an unpublished opinion, *In re McCurdy*, 230 F.3d 1367, 2000 WL 1206003 (9th Cir.2000), held a claim arising from a $2.35 million Hawaii state jury verdict for medical malpractice does not fall within the § 523(a)(6) meaning of willful and malicious injury, but, in doing so, stated that *Kawaauhau* was inapplicable because it was decided after the bankruptcy court's ruling in *McCurdy* and both parties agreed that "this intervening change in case law may not be applied on our review of a decision on a Rule 60(b) motion." After McCurdy filed bankruptcy, the plaintiff filed a § 523(a)(6) complaint. The bankruptcy court granted summary judgment for the plaintiff on the basis of the collateral estoppel effect of the state court judgment and thus held the debt nondischargeable. Meanwhile, the Hawaii Supreme Court reversed the jury's findings of liability for fraud and vacated the award of punitive damages. The defendant then filed a Rule 60(b) motion with the bankruptcy court to set aside the summary judgment contending the Hawaii Supreme Court's reversal of the fraud verdict eliminated the collateral estoppel effect on the "willful and malicious" requirement of § 523(a)(6). The Ninth Circuit reviewed the matter after the district court affirmed the bankruptcy court's denial of the Rule 60(b) motion.

## Facts

The facts underlying this court's prior nondischargeability judgment are set forth at *In re Cole*, 136 B.R. 453 (Bankr. N.D.Tex.1992). The findings of the court in such opinion are hereby incorporated by reference. After hearing on September 11, 2000, upon remand from the district court, this court elaborates on and makes additional findings.

In February of 1987, Stanley, as a result of suffering a dislocation of his left index finger, had his hand examined at a hospital emergency room. At this time, as well as at a subsequent check-up in May of 1987, no nerve problems were found in Stanley's left hand.

In July of 1987, Stanley sought medical treatment for his dislocated left index finger from Dan Butler, M.D., who is an orthopedic surgeon in Enid, Oklahoma. Dr. Butler evaluated Stanley's finger and recommended that he undergo joint ligament reconstruction. Dr. Butler did not treat Mr. Stanley. In August of 1987, since he was still experiencing pain, Stanley sought treatment from Cole at Cole's office in Enid, Oklahoma.

Cole made a diagnosis similar to that of Dr. Butler and recommended that Stanley undergo joint ligament reconstruction. While performing the surgery, Cole mistakenly cut the median nerve which resulted in Mr. Stanley losing seventy-five percent of the use of his left hand. After a few weeks had passed, Mr. Stanley sought a second opinion from Dr. Howard, a hand specialist in Oklahoma City. After several different treatments, which attempted to remedy the injury caused by Cole's mistake, Howard amputated Stanley's left index finger.

During the Oklahoma state court trial, three doctors, testifying as experts for Stanley, indicated that they felt that Cole's treatment of Stanley fell below the standard of care provided in the community. One of the doctors testified that Cole was incompetent, and another claimed that Cole not competent to perform hand surgeries. One of the doctors also testified that while there is no medically accepted excuse for mistakenly cutting the median nerve, the procedure seems to be confused quite often.

Both the diagnosis and proposed treatment of Stanley's problem by Cole was correct. Indeed, Dr. Butler's testimony in the Oklahoma state court trial confirms Cole's assertion in this regard. Cole credibly testified that he did not intend to injure Stanley and that he was sorry for the mistake. He did not previously know Stanley and harbored no ill will towards Stanley. Cole did not intend to injure Stanley.

## Discussion

Section 523(a)(6) of the Bankruptcy Code states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt:

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

In *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), the United States Supreme Court addressed a split in the circuit courts of appeals concerning the appropriate legal standard to apply when presented with the issue of whether a debtor's conduct constitutes a "willful and malicious injury". The Court held that a debt arising from a medical malpractice judgment attributable to a physician's negligent or reckless conduct does not fall within the "willful and malicious injury" exception to discharge. *Id.*

In *Kawaauhau*, Mrs. Kawaauhau sought treatment from the debtor, Dr. Geiger, for a foot injury; Geiger had Kawaauhau admitted to a hospital to attend to the risk of a potential infection resulting from the injury. Acknowledging that Kawaauhau wished to minimize the costs of her treatment, Geiger prescribed an oral penicillin knowing that an intravenous penicillin

would have been more effective. Geiger departed on a business trip and left Kawaauhau in the care of other physicians. During Geiger's absence, Kawaauhau was transferred to an infectious disease specialist. Upon his return, Geiger cancelled the transfer and halted all antibiotic treatment as he believed the infection had subsided. Kawaauhau's condition worsened over the next few days and ultimately required the amputation of her right leg below her knee.

Kawaauhau sued Geiger. After a jury trial, the jury found Geiger liable and awarded $355,000 in damages. Geiger, who carried no malpractice insurance, moved to Missouri where his wages were garnished and where he ultimately filed for bankruptcy protection. The bankruptcy court concluded that Geiger's conduct fell far below the appropriate standard of care and was therefore willful and malicious. The debt was declared nondischargeable, which the district court affirmed on appeal. A three-judge panel of the Eighth Circuit reversed, and a divided *en banc* court agreed, holding that:

> a judgment debt cannot be exempt from discharge in bankruptcy unless it is based on what the law has for generations called an intentional tort, a legal category that is based on "the consequences of an act rather than the act itself." RESTATEMENT (SECOND) OF TORTS § 8A, comment a, at 15 (1965).

113 F.3d 848, 852 (1997) (*en banc*). The Eighth Circuit recognized that its interpretation of § 523(a)(6) was "at odds" with the approach taken by both the Sixth and Tenth Circuits. *Id.* at 853. The Supreme Court affirmed the Eighth Circuit's judgment, noting that under the Eighth Circuit's approach, "a debt for malpractice, because it is based on conduct that is negligent or reckless, rather than intentional, remains dischargeable." 523 U.S. at 60, 118 S.Ct. 974.

Kawaauhau argued that the debt should be declared nondischargeable because Geiger intentionally rendered inadequate medical care that led to her injury. Geiger deliberately chose less effective treatment to cut costs, even though he knew he was providing substandard treatment. The Supreme Court held that § 523(a)(6) encompasses only acts done with the actual intent to cause injury and does not cover acts done intentionally that cause injury. The Court reasoned that:

> The word "willful" in § 523(a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts.

523 U.S. at 61, 62, 118 S.Ct. 974. The Court held that debts arising from recklessly or negligently inflicted injuries do not fall within the purview of § 523(a)(6).

This court's previous opinion, issued prior to *Kawaauhau,* stated that " 'willful' means 'deliberate or intentional', a deliberate and intentional act which necessarily leads to injury." *In re Cole,* 136 B.R. 453, 457 *citing* 3 COLLIER ON BANKRUPTCY ¶ 523.16 (15th ed.1991). Moreover, this court relied upon the Tenth Circuit's case, *First Nat'l Bank v. Franklin (In re Franklin),* 726 F.2d 606 (10th Cir.1984), for the proposition "that a finding of willful and malicious requires the willful doing of an act which necessarily leads to injury." *Cole* at 458. Finally, this court noted that the Sixth Circuit had applied the same definition of willful and malicious in *Perkins v. Scharffe (In re Scharffe),* 817 F.2d 392 (6th Cir.1987); *cert. denied,* 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987).

In short, the Supreme Court in *Kawaauhau* specifically rejects the prior analysis taken by this court.

There is no evidence to support the conclusion that Cole intended to injure Stanley. The injury was the result of medical malpractice, a cause of action based on negligence. Therefore, Cole's conduct does not rise to the level of a "willful and malicious injury" as is required to make the debt nondischargeable under 11 U.S.C. § 523(a)(6).

Stanley argues the Fifth Circuit's opinion in *In the Matter of Miller*, 156 F.3d 598 (5th Cir.1998), sufficiently expands the Supreme Court's holding in *Kawaauhau* so as to dictate a reaffirmance of this court's prior holding on the issue of willful and malicious[3]. While the Fifth Circuit did indeed elaborate on the Supreme Court's decision in *Kawaauhau v. Geiger*, this court is not persuaded that *Miller* dictates a reaffirmance of this court's prior holding. The *Kawaauhau* case is strikingly similar to the instant case, and, unfortunately for Mr. Stanley, compels this court to now hold that Stanley's injury does not fall within the ambit of what constitutes a willful and malicious injury under § 523(a)(6).

Based on the foregoing, the debt arising from Stanley's injury, which was caused by Cole, will be discharged. The court will enter its judgment in accordance with this Memorandum Opinion.

**3.** After an exhaustive analysis of the meaning of willful and malicious injury, the Fifth Circuit held that "an injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *Id.* at 606. The intended act in the instant case was ligament reconstruction surgery, not the severance of Stanley's nerve. The intended act does not give rise to a substantial certainty of harm.